**SYLVIA BAIZ**
California State Bar No. 124367
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1410
Facsimile: (619) 544-1473

Attorney for Defendant **Flores-Blanco**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HON. THOMAS J. WHELAN**)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No. 07-CR-3405-W |
| Plaintiff, ) | |
| ) | STATEMENT OF FACTS AND |
| v. ) | MEMORANDUM OF POINTS AND |
| ) | AUTHORITIES IN SUPPORT OF |
| **ERNESTO FLORES-BLANCO**, ) | DEFENDANT'S MOTIONS |
| ) | |
| Defendant. ) | |

**I**.

**STATEMENT OF FACTS**

The statement of facts and the facts discussed in the memorandum of points and authorities, are strictly for the purposes of this motion and are not to be considered admissions by the defendant, Ernesto Flores-Blanco. Mr. Flores-Blanco expressly reserves the right to contradict, explain, amplify, or otherwise discuss any of the facts mentioned here at trial.

According to government reports, on December 9, 2007 agents began surveillance in the neighborhood directly north of the U. S. Mexico border at about 5:00 p.m. At various times, one agent, Sedano, observed Mr. Flores being present or walking around the neighborhood. Mr. Flores lives at 806 Second Street, Calexico, California which is about 300 feet from the U.S./Mexico border and in the area where agents indicated they were conducting their surveillance. Agent reports say that agent Sedano saw Mr. Flores waiving to someone at the border and said "I'm here" in Spanish. Reports indicate then that Mr.

1  Flores saw agent Sedano and was startled and told someone on his cell phone that someone
2  was there; then walked away.  On that evening Mr. Flores was out in the neighborhood for
3  various reasons, among which was the fact that he was putting out the trash for one of the
4  neighbors who was out of town.  Mr. Flores has no cell phone nor did he use one on the
5  night of December 9 or 10, 2007.  Mr. Flores was immediately arrested. The material
6  witness who was arrested that night indicated that a friend of his made arrangements to
7  smuggle him into the United States.  He jumped over the U.S./Mexico border fence and ran
8  toward a person who was supposed to help him hide, but did not see the person once he got
9  over the fence.  He was then found hiding in some bushes, no where near Mr. Flores, by a
10 border patrol agent.

## II.

### MOTION TO COMPEL DISCOVERY

Mr. Flores requests the following discovery pursuant to Fed. R. Crim. P. 12(b)(4) and 16:

(1)  all written and oral statements made by Mr. Flores.  This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Flores are contained.  It also includes the substance of any oral statements which the government intends to introduce at trial.  These are all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963).  Mr. Flores also requests any response to any Miranda warnings which may have been given to him.  See United States v. McElroy, 697 F.2d 459 (2d Cir. 1982);

(2)  all documents, statements, agents' reports, and tangible evidence favorable to Mr. Flores on the issue of **guilt or punishment** and/or which affects the credibility of the government's case. Mr. Flores specifically requests **dispatch tapes or recordings related to communications amongst border patrol agents attempting to arrest Mr. Flores**.  He also specifically requests any recordings of "remote video surveillance system" related to the

2

1  nights of December 9 and early morning on December 10, 2007.  This evidence must be

2  produced pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963), and United States v. Agurs,

3  427 U.S. 97 (1976);

4      (3)  all evidence, documents, records of judgments and convictions, photographs and

5  tangible evidence, and information pertaining to any prior arrests and convictions or prior

6  bad acts.  Mr. Flores specifically requests any evidence demonstrating that he previously

7  evaded checkpoints or border patrol agents.  Evidence of prior record is available under Fed.

8  R. Crim. P. 16(a)(1)(B).  Evidence of prior similar acts is discoverable under Fed. R. Crim. P.

9  16(a)(1)© and Fed. R. Evid. 404(b) and 609;

10      (4)  all evidence seized as a result of any search, either warrantless or with a warrant,

11  in this case.  He also specifically requests copies of all photographs, videotapes or recordings

12  made in this case.  This is available under Fed. R. Crim. P. 16(a)(1)©;

13      (5)  all arrest reports, investigator's notes, memos from arresting officers, sworn

14  statements and prosecution reports pertaining to Mr. Flores's arrest.   These are available

15  under Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(I);

16      (6)  the personnel file of the interviewing agent(s) containing any complaints of

17  assaults, abuse of discretion and authority and/or false arrest. Pitchess v. Superior Court, 11

18  Cal. 3d. 531, 539 (1974).  In addition, the defense requests that the prosecutor examine the

19  personnel files of all testifying agents, and turn over Brady and Giglio material reasonably in

20  advance of trial.  United States v. Henthorne, 931 F.2d 29, 30-31(9th Cir. 1991).  If the

21  prosecutor is unsure as to whether the files contain Brady or Giglio material, the files should

22  be submitted to the Court, in camera.  Id.  The prosecution should bear in mind that there

23  exists an affirmative duty on the part of the government to examine the files.  Id.;

24      (7) any and all statements made by any other uncharged co-conspirators. The defense

25  is entitled to this evidence because it is material to preparation for the defendant's case and

26  potentially Brady material.  Also, insofar as such statements may be introduced as

27  co-conspirator statements, they are discoverable. Fed. R. Crim. 16(a)(1)(c) and Brady.  This

28

1  evidence must be produced pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and United
2  States v. Agurs, 427 U.S. 97 (1976);
3       (8)  Mr. Flores requests copies of any and all audio/video tape recordings made by the
4  agents in this case and any and all transcripts, including taped recordings of any
5  conversations of any of the agents involved in this case.  This evidence is available under
6  Fed. R. Crim. P. 16(a)(1)(C);
7       (9)  Mr. Flores specifically requests the name and last known address of each
8  prospective government witness.   See United States v. Napue, 834 F.2d 1311 (7th Cir.
9  1987); United States v. Tucker, 716 F.2d 583 (9th Cir. 1983) (failure to interview
10 government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175, 1181
11 (9th Cir. 1979) (defense has equal right to talk to witnesses).
12      (10)  all other documents and tangible objects, including photographs, books, papers,
13 documents, photographs, or building or places or copies of portions thereof which are
14 material to Mr. Flores's defense or intended for use in the government's case-in-chief or were
15 obtained from or belong to Mr. Flores.  Mr. Flores also requests access to all his personal
16 belongings seized, including his wallet, any clothes he was wearing at the time of his arrest
17 and any baggage he had with him. Rule 16(a)(1)(C);
18      (11) all results or reports of scientific tests or experiments, or copies of which are
19 within the possession, control, or custody of the government or which are known or become
20 known to the attorney for the government, that are material to the preparation of the defense,
21 including the opinions, analysis and conclusions of experts consulted by law enforcement
22 including finger print specialists in the instant case.  These must be disclosed, once a request
23 is made, even though obtained by the government later, pursuant to Fed.R.Crim.Pro.
24 16(a)(1)(D).
25      (12)  any express or implicit promise, understanding, offer of immunity, of past,
26 present, or future compensation, agreement to execute a voluntary return rather than
27 deportation or any other kind of agreement or understanding between any prospective
28

4

government witness and the government (federal, state and local), including any implicit understanding relating to criminal or civil income tax liability. United States v. Shaffer, 789 F.2d 682 (9th Cir. 1986); United States v. Risken, 788 F. 2d 1361 (8th Cir. 1986); United States v. Luc Levasseur, 826 F.2d 158 (1st Cir. 1987);

(13) any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed. Brown v. Duggen, 831 F.2d 1546, 1558 (11th Cir. 1986) (evidence that witness sought plea bargain is to be disclosed, even if no deal struck); Haber v. Wainwright, 756 F.2d 1520, 1524 (11th Cir. 1985);

(14) any evidence that of any witnesses who were with Mr. Flores at the time of his arrest or information that any prospective government witness is biased or prejudiced against the defendant, has a motive to falsify or distort his or her testimony or is prejudiced against Mexican people. Pennsylvania v. Ritchie, 480 S.Ct. 39 (1989); United States v. Strifler, 851 F.2d 1192 (9th Cir. 1988);

(15) any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction. See Rule 608(b), Federal Rules of Evidence and Brady;

(16) any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. United States v. Chitty, 760 F.2d 425 (2d Cir.), cert. denied, 474 U.S. 945 (1985); and,

(17)  any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. United States v. Strifler, 851 F.2d 1197 (9th Cir. July 11, 1988); Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980);

(18) the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a

1  government witness. Mr. Flores specifically requests any notes, reports or recordings of any
2  statements made by material witnesses who were released. United States v. Cadet, 727 F.2d
3  1469 (9th Cir. 1984);
4        (19)  the name and last known address of each prospective government witness. See
5  United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d
6  583 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective);
7  United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to
8  witnesses);
9        (20)  the name of any witness who made an arguably favorable statement concerning
10 the defendant or who could not identify him or who was unsure of his identity, or
11 participation in the crime charged. Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968);
12 Chavis v. North Carolina, 637 F.2d 213, 223 (4th Cir. 1980); James v. Jago, 575 F.2d 1164,
13 1168 (6th Cir. 1978); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1975);
14       (21)  Mr. Flores requests a transcript of the grand jury testimony and rough notes of all
15 witnesses expected to testify at the motion hearing or at trial.  This evidence is discoverable
16 under Fed. R. Crim. P. 12(I) and 26 and will be requested pursuant to
17       (22) Jencks Act Material.  The defense requests all material to which defendant is
18 entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial,
19 including dispatch tapes.  A verbal acknowledgment that "rough" notes constitute an accurate
20 account of the witness' interview is sufficient for the report or notes to qualify as a statement
21 under §3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United
22 States v. Boshell, 952 F.2d 1101 (9th Cir. 1991), the Ninth Circuit held that when an agent
23 goes over interview notes with the subject of the interview the notes are then subject to the
24 Jencks Act. The defense requests pre-trial production of Jencks material to expedite cross-
25 examination and to avoid lengthy recesses during the pre-trial motions hearings or trial.  Mr.
26 Flores specifically requests rough notes regarding the interview of Mr. Flores, especially if
27 the notes reflect the time and place of those statements.  Mr. Flores puts the government on
28

notice that he will seek rough notes of any and all testifying agents on the date set for the motion hearing, and requests that the agent/witnesses be instructed to bring the notes to court.

**(23) Prior arrests**. Federal Rule of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Fed. R. Evid. 404(b), 1991 Advisory Committee Notes. Timely notice of such evidence is also critical so that Mr. Flores may adequately prepare his defense. The Court should exclude any evidence the Government will seek to introduce under Rule 404(b) that has not been disclosed in discovery.

The discovery material makes reference to removal proceedings. Because the Government carries the burden of showing how any other acts evidence is relevant to one or more issues in the case, "it must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993). Because the Government has failed to articulate the precise evidential hypothesis by which a fact of consequence will be shown by this evidence, this evidence must be excluded under Fed. R. Evid. 401, 404(b). Further, their admission would be more prejudicial than probative, as they would make the jury more likely to convict Mr. Flores because it believes he has the propensity to commit crimes rather than because of the evidence presented at trial. This evidence must therefore by excluded under Fed. R. Evid. 403 as well. Mr. Flores specifically requests government investigative reports regarding any other arrests for "smuggling," including events of transportation, harboring or any other conduct consider by the government to be involved with attempts to assist undocumented persons in any manner. Specifically, Mr. Flores requests the basis for the government's belief that he was involved in smuggling at the I-5 checkpoint in San Clemente, California on the dates of September 25, 2005 and January 30, 2006.

## III.

## MOTIONS TO SUPPRESS EVIDENCE

Mr. Flores-Blanco moves to suppress his statements, and the evidence seized from him, as the fruits of his illegal detention and arrest at Vista, California. He also moves to suppress his statements as involuntary and obtained in violation of Miranda.

**A. Agents Lacked Probable Cause To Arrest Mr. Flores-Blanco.**

Mere presence at the scene of a crime is not a crime, and aside from Mr. Flores-Blanco's presence at the arrest site, the agents had no evidence linking Mr. Flores-Blanco with the attempted smuggling of an undocumented person on December 9, or 10, 2007. A warrantless arrest in public may be made only if police have probable cause to believe that the suspect has been or is committing a criminal offense. Carroll v. United States, 267 U.S. 132 (1925). Probable cause to arrest exists when an arresting officer has facts within his knowledge sufficient to warrant a prudent person in believing that the person had committed or was committing a crime. United States v. Robertson, 833 F.2d 77, 780 (1987); Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Jennings, 468 F.2d 111 (9th Cir. 1972).

Furthermore, the government has the burden of proving the lawfulness of the warrantless arrest. United States v. Strikler, 490 F.2d 378, 380 (9th Cir. 1974). The standard for probable cause is an objective one. The subjective good faith of the officer is not dispositive. United States v. McDowell, 475, F.2d 1037, 1039 (9th Cir. 1973). Moreover, the Supreme Court, in Beck v. Ohio, issued a warning that warrantless arrests are especially subject to scrutiny because,

> an arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, to likely to be subtly influenced by the familiar shortcomings of hindsight judgment.

Beck, 379 U.S. at 96 (holding that unspecified reports and information that defendant was a gambler along with knowledge of the defendants appearance and gambling record did not constitute probable cause to arrest defendant).

The Court must first determine whether there was a full custodial arrest. Among the circumstances that courts can consider in making the determination of whether there has been an arrest are:

1. the officer's intent in stopping the citizen (see e.g. <u>Sibrion v. New York</u>, 392 U.S. 40, 46-7 (1968);
2. the duration of the detention, <u>Dunaway v. New York</u>, 442 U.S. at 206-16;
3. the impression conveyed to the citizen as to whether he or she was in custody or only briefly detained for questioning, <u>United States v. Estrada Lucas</u>, 651 F.2d 1261 (9th Cir. 1980);
4. the questions, if any, asked, <u>United States v. Estrada-Lucas</u>, 651 F.2d 1261 (9th Cir 1980); and
5. the extent of any search performed, <u>Ibarra v. Illinois</u>, 444 U.S. 85, 93 (1979).

*See also*, <u>Benitez-Mendez v. INS</u>, 752 F.2d 1309 (9th Cir. 1984) (placing individual in vehicle was a seizure); <u>United States v. Moreno</u>, 742 F.2d 532 (9th Cir. 1984) (initial detention escalated into arrest without probable cause). In this case, there is no dispute but that Mr. Flores-Blanco was taken into custody and placed under arrest at La Quinta motel immediately after arriving there with the co-defendant. The arrest occurred prior to Mr. Flores-Blanco's interrogation and the search of his person. Thus, to justify his arrest, the government must show probable cause based upon the facts known to the agents shortly after they arrived on the scene.

In another case with facts similar to those presented here, the Ninth Circuit held an arrest invalid when the only basis for the arrest was the defendant's proximity to criminal activity. <u>United States v. Robertson</u>, 833 F.2d 777 (9th Cir. 1987). In <u>Robertson</u> the Drug Enforcement Agency (DEA) received information that a man named Johnson was manufacturing methamphetamine. The DEA also discovered an existing and valid warrant for Johnson. When they executed the warrant, the DEA agents noticed a woman, named Steeprow, leaving Johnson's house and arrested her. The court held that probable cause for Steeprow's arrest was wanting and stated that "Lacking from both the arrest warrant for Johnson and the search warrant for the premises was the slightest indication that Steeprow was involved in criminal activity. Her mere presence on the premises, without more, cannot support an arrest of her under these circumstances." *Id.* at 782. The holding in <u>Robertson</u>

9

1  was reaffirmed in United States v. Del Vizo, 918 F.2d 821 (9th Cir. 1990) where the Court
2  observed:

> Of course, a person's mere proximity to others engaged in criminal activity is insufficient to establish probable cause to search or arrest that person..

918 F.2d 826 n.7.

The Del Vizo Court also cited United States v. Vaughan, 718 F.2d 332 (9th Cir. 1983), another case with similarities to the present case. In Vaughan the defendant was riding in a car with two subjects of outstanding arrest warrants for conspiring to distribute and smuggle large quantities of drugs. While the others were being arrested, Vaughan attempted to walk away with a soft-walled vinyl briefcase he had with him. He was ordered to freeze at gunpoint and his briefcase was searched. The Court ruled that Vaughan's mere presence in a car with two drug conspirators did not give rise to probable cause to arrest. The agents were justified in detaining Vaughan briefly while they secured the two prisoners named in the warrants, but they had no right to search his briefcase, either as an incident to his arrest, or as part of a Terry frisk.[1] In particular, the Court noted that, at the time of his arrest, "for all the agents knew at the time they detained Vaughan and searched his briefcase, he could have been a hitchhiker. Thus, no probable cause existed..." 718 F.2d 333-335. *See also* United States v. Arrellano-Rios, 799 F.2d 520, 521-522 (9th Cir. 1986) (affirming Vaughan and illustrating the sort of additional circumstantial information necessary to give rise to probable cause to arrest a mere passenger). Yet another factually similar case which holds that mere presence does not give rise to probable cause is United States v. Prieto-Villa, 910 F.2d 601 (9th Cir. 1990). Prieto was at the premises were a consensual search was conducted. The Court ruled that his presence in a house where drugs, weapons and cash were found was not enough, alone, to justify an arrest. 910 F.2d 604-605.

When examining the basis for the arrest in this case, the court must not only consider

---

[1] Because the briefcase was softwalled and thin, the agents could have felt it for weapons. Thus, the more intrusive procedure of opening it to examine its contents warranted suppression. 718 F.2d at 335.

10

the type of facts known to the officer, but also whether those facts were particular to Mr. Flores-Blanco. In United States v. Carrizoza-Gaxiola, 523 F.2d 239 (9th Cir. 1975), the Ninth Circuit held that "founded suspicion requires some reasonable ground for singling out the person stopped as one who was involved or is about to be involved in criminal activity." Id. at 241 (holding that the fact that defendant was Mexican was not sufficient for founded suspicion). Likewise, probable cause must be so **particularized** that the officer has probable cause to believe that a **particular** person, the defendant, had committed a crime or was in the process of committing a crime, rather than indiscriminately sweeping up **everyone** in the area of the crime in a mass arrest. The government has the burden of proving the lawfulness of the warrantless arrest. United States v. Strikler, 490 F.2d 378, 380 (9th Cir. 1974). The standard for probable cause is an objective one. The subjective good faith of the officer is not dispositive. United States v. McDowell, 475 F.2d 1037, 1039 (9th Cir. 1973).

In this case, the arresting officer at most: 1) saw Mr. Flores in the area very close to the U. S./Mexico border; 2) saw Mr. Flores talking on a cell phone; 3) thought he saw Mr. Flores making hand singles to someone and said "I'm here" 4) walked away when he saw the agent. As the above-noted cases demonstrate, these facts do not amount to probable cause. In fact, this case is not even close. As in Robertson and Carrizoza-Gaxiola, mere proximity to other suspected of illegal activity is not enough to establish probable cause to arrest or search. There is not sufficient evidence, other than his proximity, which suggests, let alone shows his involvement with smuggling. Therefore, the agents lacked probable cause to arrest him, and all evidence obtained as a result of the arrest must be suppressed.

**B. Mr. Flores-Blanco's Statements Must Be Suppressed.**

It appears from discovery provided by the government that Mr. Flores was arrested on December 10, 2007 at about 12:45 a.m.– after midnight. He was apparently questioned in the very early morning of December 10, 2007, but he was not taken to court until December 11, 2004. Mr. Flores was given only a bean burrito to eat while he was in the custody of

border patrol agents for two days.. What is known is that Mr. Flores-Blanco was interrogated by agents in a menacing fashion. (See attached declaration filed in support of this motion.)

It is the government's burden, upon challenge by the defendant, to establish the admissibility of any custodial statement obtained from a defendant. Mr. Flores-Blanco puts the government to its proof on this issue. Custodial interrogation conducted to secure incriminating statements from an accused must be preceded by procedural safeguards. Miranda v. Arizona, 348 U.S. 437 (1966). Once a person is in custody, Miranda warnings must be given before any interrogation. "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to . . . counsel." Miranda v. Arizona, 384 U.S. at 475. No evidence or statement obtained through a custodial interrogation may be used at trial unless and until the government demonstrates that the defendant received Miranda warnings prior to the statement and validly waived her rights. Id. 384 U.S. at 479.

If the government contends that Mr. Flores-Blanco waived his Fifth Amendment rights, it must prove that he did in fact waive his rights. The government's burden, in proving a valid waiver of Miranda, is high. 384 U.S. at 475. This Court must "indulge every reasonable presumption against waiver" of Miranda rights. United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984). The validity of the waiver "depends . . . 'upon the particular facts and circumstances surrounding [the] case, including the background, experience and conduct of the accused.'" Edwards v. Arizona, 451 U.S. 477, 482, reh'g denied, 452 U.S. 973 (1981) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

In addition to proving Miranda warnings and a valid waiver, the government must also establish, by a preponderance of evidence, that any statement was given voluntarily. Lego v. Twomey, 404 U.S. 477, 484 (1972). This is a separate requirement: a confession admitted in violation of Miranda violates a defendant's Fifth Amendment right against

self-incrimination and his Sixth Amendment right to counsel; a coerced confession also violates a defendant's right to due process of law. See Jackson v. Denno, 378 U.S. 368, 376 (1964).

A voluntary statement is one which is the product of a "rational intellect" and a "free will." Blackburn v. Alabama, 361 U.S. 199, 208 (1960). No one factor is determinative. Rather, this Court must look to the "totality all of the surrounding circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Among the many factors which the Court can weigh is the age of the accused, his education and intelligence, advice as to constitutional rights, length of detention, repeated and prolonged nature of the questioning and use of physical punishments. 412 U.S. at 226. A statement may not be admitted if because of mental illness, drugs, or intoxication, the statement was not the product of a rational intellect and a free will. Gladden v. Unsworth, 396 F.2d 373, 380-81 (9th Cir. 1968).

When law enforcement officers use psychological pressure to break down the will of an accused, all statements elicited thereby are deemed involuntary. See Spano v. New York, 360 U.S. 315 (1959). A confession is involuntary whether it occurs by physical intimidation or psychological pressure. Townsend v. Sain, 307 U.S. 293 (1963). Subtle psychological coercion, either by promises of leniency or indirect threats, may also render a confession involuntary. United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

In the instant case, Mr. Flores-Blanco made several statements after his arrest. He was in custody at the time the agents took his statements. Therefore, the government bears the burden of proving that Mr. Flores-Blanco: 1) was fully advised of his Miranda rights; 2) freely, voluntarily and knowingly waived these rights; and 3) made the statement freely and voluntarily.

To establish the legality and admissibility of the defendant's statements, the government must show compliance with Miranda v. Arizona and establish by a preponderance of the evidence that the defendant's statement was given voluntarily. An

evidentiary hearing in this matter is thus necessary. United States v. Batiste, 868 F.2d 1414 (9th Cir. 1989) (holding that a district court has complete discretion to hold an evidentiary hearing whenever a Fourth Amendment violation is alleged and in footnote 5, implying that an evidentiary hearing must be held if a Fifth Amendment violation is alleged). In addition, Title 18 U.S.C. §3501 requires a hearing on voluntariness prior to the admission of any defendants' statement.

## IV.
## LEAVE TO FILE FURTHER MOTIONS

Because counsel for Mr. Flores-Blanco has not received all discoverable matters at the time the instant motions were drafted, he respectfully requests that he be allowed time to file such additional pretrial motions as may become apparent and necessary.

## V.
## CONCLUSION

For the foregoing reasons, it is respectfully requested that the court grant the above motions.

Respectfully submitted,

Date: January 28, 2008                /S/Sylvia A. BAIZ
                                      **SYLVIA BAIZ**
                                      Attorney for Mr. Flores-Blanco