KAREN P. HEWITT
United States Attorney
DAVID D. LESHNER
Assistant U.S. Attorney
California State Bar No. 207815
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7163
David.Leshner@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>MARIO RAYMOND FERNANDEZ (1),<br><br>ERNESTO FLORES-BLANCO (2),<br><br>   Defendants. | Criminal Case No. 07-CR-3405-W<br><br>DATE:  February 11, 2008<br>TIME:  2:00 p.m.<br><br>**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT FLORES-BLANCO'S MOTIONS TO:**<br><br>**(1)  DISCLOSE DISCOVERY;**<br><br>**(2)  SUPPRESS EVIDENCE AND STATEMENTS; AND**<br><br>**(3)  GRANT LEAVE TO FILE FURTHER MOTIONS** |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and David D. Leshner, Assistant United States Attorney, and hereby files its response and opposition to defendant Ernesto Flores-Blanco's motions to (1) disclose discovery; (2) suppress evidence and statements; and (3) grant leave to file further motions. Said response and opposition is based upon the files and records of this case together with the attached memorandum of points and authorities.

/ / /

/ / /

/ / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## STATEMENT OF THE CASE

On December 20, 2007, defendants Mario Raymond Fernandez and Ernesto Flores-Blanco were arraigned on a one-count Indictment charging them with inducing and encouraging illegal aliens to enter the United States and aiding and abetting, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and (v)(II). Defendants entered pleas of not guilty.

## II

## STATEMENT OF FACTS

**A.  Defendants' Apprehension**

On the evening of December 9, 2007, Calexico Border Patrol Station's Smuggler Targeting Action Team ("STAT") was conducting surveillance near Encinas Avenue and First Street in Calexico, California. This area is approximately one-half mile east of the Calexico West Port of Entry and is immediately north of the International Boundary Fence which runs parallel to First Street. The area is notorious for alien smuggling coordinated on both sides of the border as illegal aliens scale the border fence assisted by smugglers in Mexico and then hide in nearby residences throughout the surrounding neighborhood with the assistance of smugglers in the United States.

At approximately 10:00 p.m. on December 9, plainclothes STAT agents observed defendants Fernandez and Flores walking together in the area of Encinas Avenue and Renaud Court. Agents recognized Fernandez and Flores as persons arrested for alien smuggling on multiple prior occasions. Fernandez and Flores walked north on Encinas Avenue and entered the backyard of 806 Second Street. Over the next several hours, agents observed Fernandez repeatedly exit the backyard, walk toward First Street, hide next to a house at 739 First Street and look across the street toward the border fence while talking on a cell phone. After each such excursion, Fernandez returned to the backyard of 806 Second Street.

At approximately 12:40 a.m., Fernandez and Flores exited the 806 Second Street backyard. Fernandez walked south on Encinas Avenue, and Flores proceeded eastbound through an alley toward a nearby apartment building known as the "White Apartments." Agents maintained surveillance of

Fernandez as he returned to his location next to 739 First Street. Fernandez was talking on a cellular phone, and a STAT team agent observed a suspected alien smuggler standing on the south side of the border fence in Fernandez' line of sight and talking on a cellular phone. Fernandez motioned with his hand for the smuggler to move to the east toward the White Apartments. The smuggler did so, and Fernandez said, "We're ready, now, now." Fernandez then walked quickly northbound on Encinas Avenue.

At the same time, another STAT agent observed Flores walk into the midst of the White Apartments, crouch down with a visual of the border fence and talk on a cellular phone. A suspected smuggler and one other individual were on the south side of the border fence opposite Flores and in his line of sight. Flores motioned with his hands toward the individuals and said, "I'm here." Flores then noticed the STAT agent, became startled, and immediately left the scene.

At approximately 12:45 a.m., a Remote Video Surveillance System operator notified agents that a suspected illegal alien was climbing the border fence south of the White Apartments. Agents responded and observed the suspected illegal alien run north from the fence and hide at the side of the White Apartments. Agents approached the individual who identified himself as Alejandro Portillo-Mendoza. In response to agents' questioning, Portillo-Mendoza stated he was a citizen of Mexico without documents allowing him to enter or remain in the United States.

Upon confirming that Portillo-Mendoza was an illegal alien, agents arrested Fernandez and Flores.

**B.    Defendants' Post-Arrest Statements**

Fernandez and Flores each received Miranda warnings and each agreed to make a statement.

According to Fernandez, he had gone to the residence at 739 First Street to visit his brother and then had gone to the White Apartments to visit a friend. Fernandez denied making any cellular telephone calls that evening and stated that he had not been in a backyard and had not hidden next to the 739 First Street residence. He denied participating in alien smuggling.

Flores likewise denied involvement in alien smuggling. He said he had gone to the White Apartments to visit a friend and then went to his house to have something to eat. Flores also maintained that he had been in his backyard with a friend named "Borrego" and that he had gone to another friend's

house three or four times that night.

**C.    Material Witness' Statements**

The material witness, Alejandro Portillo-Mendoza, informed agents that he had traveled to Mexicali, Mexico with the intention of entering the United States. A friend had made arrangements for him to be smuggled into the United States for a $1500 smuggling fee.

On December 9, a smuggler took Portillo-Mendoza to the border fence. The smuggler pointed to a person hiding on the north side of the fence between some houses, and Portillo-Mendoza observed the person signal by waving his hand. The smuggler told Portillo-Mendoza to climb over the fence and run to the person on the north side who would help him hide.

Portillo-Mendoza climbed the fence and ran to the location where the person had been hiding, but no one was there. He hid on his own, and agents apprehended him shortly thereafter. Portillo-Mendoza was unable to identify either Fernandez or Flores from photo lineups.

### III

### ARGUMENT

**A.    Motion For Discovery**

The Government has and will continue to fully comply with its discovery obligations. To date, the Government has provided defendants with 94 pages of discovery, including reports of their arrests and rap sheets, as well as DVDs of their post-arrest statements and the material witness' statement.

In an attempt at simplification, this memorandum will address two specific areas of discovery: (1) items which the Government either has provided or will voluntarily provide; and (2) items demanded and discussed by Defendant which go beyond the strictures of Rule 16 and are not discoverable.

**1.    Items which the Government has provided or will voluntarily provide.**

a.    The Government will disclose to Defendant and make available for inspection, copying or photographing: any relevant written or recorded statements made by Defendant, or copies thereof, within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government; and that portion of any written record containing the substance of any relevant oral statement made by Defendant

1 whether before or after arrest in response to interrogation by any person then known to Defendant to be
2 a Government agent. The Government also will disclose to Defendant the substance of any other
3 relevant oral statement made by Defendant whether before or after arrest in response to interrogation
4 by any person then known by Defendant to be a Government agent if the Government intends to use that
5 statement at trial.

6        b.       The Government will permit Defendant to inspect and copy or photograph books,
7 papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof,
8 which are within the possession, custody or control of the Government, and which are material to the
9 preparation of Defendant's defense or are intended for use by the Government as evidence during its
10 case-in-chief at trial, or were obtained from or belong to Defendant;[1]

11        c.       The Government will permit Defendant to inspect and copy or photograph any
12 results or reports of physical or mental examinations, and of scientific tests or experiments, or copies
13 thereof, which are in the possession, custody or control of the Government, the existence of which is
14 known, or by the exercise of due diligence may become known, to the attorney for the Government, and
15 which are material to the preparation of his defense or are intended for use by the Government as
16 evidence during its case-in-chief at trial;[2]

17        d.       The Government has furnished to Defendant a copy of his prior criminal record,
18 which is within its possession, custody or control, the existence of which is known, or by the exercise
19 of due diligence may become known to the attorney for the Government;

20        e.       The Government will disclose the terms of all agreements (or any other
21 inducements) with cooperating witnesses, if any are entered into;

22 / / /
23 / / /
24 / / /

---

[1] Rule 16(a)(1)(C) authorizes defendants to examine only those Government documents material to the preparation of their defense against the Government's case-in-chief. United States v. Armstrong, 517 U.S. 456, 463 (1996). Rule 16 does not require the disclosure by the prosecution of evidence it intends to use in rebuttal. United States v. Givens, 767 F.2d 574, 583 (9th Cir. 1984).

[2] The Government need not "disclose every single piece of paper that is generated internally in conjunction with scientific tests." United States v. Iglesias, 881 F.2d 1519, 1524 (9th Cir. 1989).

    f. The Government may disclose the statements of witnesses to be called in its case-in-chief when its trial memorandum is filed;[3]

    g. The Government will disclose any record of prior criminal convictions that could be used to impeach a Government witness prior to any such witness' testimony;

    h. The Government will disclose in advance of trial the general nature of other crimes, wrongs, or acts of Defendant that it intends to introduce at trial pursuant to Rule 404(b) of the Federal Rules of Evidence;

    i. The Government acknowledges and recognizes its continuing obligation to disclose exculpatory evidence and discovery as required by Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), the Jencks Act and Rules 12 and 16 of the Federal Rules of Criminal Procedure, and will abide by their dictates.[4]

  **2.** **Items which go beyond the strictures of Rule 16**

    **a.** **Defendant's requests for specific Brady information or general Rule 16 discovery.**

Defendant requests that the Government disclose all evidence favorable to him, which tends to exculpate him, which may be relevant to any possible defense or which "affects the credibility of the government's case." (Motion at 2.)

///

---

[3] Production of these statements is governed by the Jencks Act and need occur only after the witness testifies on direct examination. United States v. Mills, 641 F.2d 785, 789-790 (9th Cir. 1981); United States v. Dreitzler, 577 F.2d 539, 553 (9th Cir. 1978). For Jencks Act purposes, the Government has no obligation to provide the defense with statements in the possession of a state agency. United States v. Durham, 941 F.2d 858, 861 (9th Cir. 1991). Prior trial testimony does not fall within the scope of the Jencks Act. United States v. Isigro, 974 F.2d 1091, 1095 (9th Cir. 1992). Further, an agent's recorded radio transmissions made during surveillance are not discoverable under the Jencks Act. United States v. Bobadilla-Lopez, 954 F.2d 519, 522-23 (9th Cir. 1992). The Government will provide the grand jury transcripts of witnesses who have testified before the grand jury if said testimony relates to the subject matter of their trial testimony. Finally, the Government reserves the right to withhold the statement of any particular witness it deems necessary until after the witness testifies.

[4] Brady requires the Government to produce all evidence that is material to either guilt or punishment. The Government's failure to provide the information required by Brady is constitutional error only if the information is material, that is, only if there is a reasonable probability that the result of the proceeding would have been different had the information been disclosed. Kyles v. Whitley, 514 U.S. 419 (1995). However, neither Brady nor Rule 16 require the Government to disclose inculpatory information to the defense. United States v. Arias-Villanueva, 998 F.2d 1491 (9th Cir. 1993).

It is well-settled that prior to trial, the Government must provide a defendant in a criminal case with evidence that is both favorable to the accused and material to guilt or punishment. Pennsylvania v. Richie, 480 U.S. 39, 57 (1987); United States v. Agurs, 427 U.S. 97 (1976); Brady v. Maryland, 373 U.S. 83, 87 (1963). As the Supreme Court has explained, "a fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence may have affected the outcome of the trial." Agurs, 427 U.S. at 104. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985) (emphasis added). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Richie, 480 U.S. at 57 (citation omitted).

The Supreme Court has repeatedly held that the Brady rule is not a rule of discovery; rather, it is a rule of fairness and is based upon the requirement of due process. Bagley, 473 U.S. at 675, n. 6. The Supreme Court's analysis of the limited scope and purpose of the Brady rule, as set forth in the Bagley opinion, is worth quoting at length:

> Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. [footnote omitted]. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial: "For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and <u>absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose . . . but to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial</u>.

Id. at 675 (emphasis added, citation omitted). Accordingly, the Government in this case will comply with the Brady mandate but rejects any affirmative duty to create or seek out evidence for the defense.

**b.    Disclosure of witness information**

Defendant seeks numerous records and information pertaining to potential Government witnesses. Regarding these individuals, the Government will provide Defendant with the following items prior to any such individual's trial testimony:

(1)    The terms of all agreements (or any other inducements) it has made with cooperating witnesses, if they are entered into;

///

1           (2)    All relevant exculpatory evidence concerning the credibility or bias of Government witnesses as mandated by law; and,

          (3)    Any record of prior criminal convictions that could be used to impeach a Government witness.

The Government opposes disclosure of rap sheet information of any Government witness prior to trial. See United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). Furthermore, any uncharged prior misconduct attributable to Government witnesses, all promises made to and consideration given to witnesses by the Government, and all threats of prosecution made to witnesses by the Government will be disclosed if required by Brady and Giglio.

        **c.    Agents' rough notes**

Although the Government has no objection to the preservation of agents' handwritten notes, the Government objects to their production at this time. If during any evidentiary proceeding, certain rough notes become relevant, these notes will be made available.

Prior production of these notes is not necessary because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980); United States v. Kaiser, 660 F.2d 724, 731-32 (9th Cir. 1981); United States v. Griffin, 659 F.2d 932, 936-38 (9th Cir. 1981).

        **d.    Government reports, summaries and memoranda**

Rule 16 provides, in relevant part:

> [T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or <u>other government agent in connection with the investigating or prosecuting of the case</u>.

Rule 16(a)(2). This subsection exempts from disclosure documents prepared by government attorneys and agents that would otherwise be discoverable under Rule 16. United States v. Fort, 472 F.3d 1106, 1110 & n.2 (9th Cir. 2007).

/ / /

/ / /

/ / /

As expressed previously, the Government recognizes its obligations pursuant to Brady, Giglio, Rule 16, and the Jencks Act.[5] But the Government shall not turn over internal memoranda or reports which are properly regarded as work product exempted from pretrial disclosure.[6] Such disclosure is supported neither by the Rules of Evidence nor case law and could compromise other areas of investigation still being pursued.

### e.   Addresses and phone numbers of Government witnesses

Defendant requests the name and last known address and phone of each prospective Government witness. While the Government may supply a tentative witness list with its trial memorandum, it objects to providing home addresses and telephone numbers. See United States v. Sukumolachan, 610 F.2d 685, 688 (9th Cir. 1980); United States v. Conder, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual Government witnesses). A request for the home addresses and telephone numbers of Government witnesses is tantamount to a request for a witness list and, in a non-capital case, there is no legal requirement that the Government supply defendant with a list of the nonexpert witnesses it expects to call at trial. United States v. W.R. Grace, 493 F.3d 1119, 1128 (9th Cir. 2007).

### f.   Personnel files of federal agents

Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984), the Government agrees to review the personnel files of its federal law enforcement witnesses and to "disclose information favorable to the defense that meets the appropriate standard of materiality . . . ." Cadet, 727 F.2d at 1467-68. Further, if counsel for the United States is uncertain about the materiality of the information within its possession, the material will be submitted to the court for in-camera inspection and review. In this case, the Government will ask the affected law enforcement agency to conduct the reviews and report their findings to the prosecutor assigned to the case.

///

---

[5] Summaries of witness interviews conducted by Government agents are not Jencks Act statements. United States v. Claiborne, 765 F.2d 784, 801 (9th Cir. 1985).

[6] The Government recognizes that the possibility remains that some of these documents may become discoverable during the course of the trial if they are material to any issue that is raised.

In <u>United States v. Jennings</u>, 960 F.2d 1488 (9th Cir. 1992), the Ninth Circuit held that the Assistant U.S. Attorney assigned to the prosecution of the case has no duty to <u>personally</u> review the personnel files of federal law enforcement witnesses. In <u>Jennings</u>, the Ninth Circuit found that the present Department of Justice procedures providing for a review of federal law enforcement witness personnel files by the agency maintaining them is sufficient compliance with <u>Henthorn</u>. <u>Id</u>. In this case, the Government will comply with the procedures as set forth in <u>Jennings</u>.

Finally, the Government has no duty to examine the personnel files of state and local officers because they are not within the possession, custody or control of the Federal Government. <u>United States v. Dominguez-Villa</u>, 954 F.2d 562 (9th Cir. 1992).

**g.    Reports of witness interviews**

To date, the Government does not have any reports regarding witness interviews or otherwise that have not been turned over to Defendant. However, to the extent that such additional reports regarding witness interviews are generated, the information sought by Defendant is not subject to discovery under the Jencks Act, 18 U.S.C. § 3500.

Reports generated in connection with a witness's interview session are only subject to production under the Jencks Act if the witness signed the report or otherwise adopted or approved the contents of the report. <u>See</u> 18 U.S.C. § 3500(e)(1); <u>United States v. Miller</u>, 771 F.2d 1219, 1231-31 (9th Cir. 1985) ("The Jencks Act is, by its terms, applicable only to writings which are signed or adopted by a witness and to accounts which are substantially verbatim recitals of a witness' oral statements."); <u>United States v. Friedman</u>, 593 F.2d 109, 120 (9th Cir. 1979) (interview report containing a summary of a witness' statements is not subject to discovery under the Jencks Act); <u>United States v. Augenblick</u>, 393 U.S. 248, 354 (1969) (rough notes of witness interview not a "statement" covering entire interview). Indeed, "both the history of the [Jencks Act] and the decisions interpreting it have stressed that for production to be required, the material should not only reflect the witness' own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context." <u>United States v. Bobadilla-Lopez</u>, 954 F.2d 519, 522 (9th Cir. 1992).

/ / /

/ / /

      **h.**    **Expert witnesses**

The Government will disclose to Defendant the name, qualifications, and a written summary of testimony of any expert the Government intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705 three weeks prior to the scheduled trial date.

      **i.**    **Other discovery requests**

To the extent that the above does not answer all of Defendant's discovery requests, the Government opposes the motion on the grounds that there is no authority requiring the production of such material.

**B.**    **Motion To Suppress**

    **1.**    **Probable cause existed to arrest defendant.**

"Police may arrest a person without a warrant if the arrest is supported by probable cause." United States v. Buckner, 179 F.3d 834, 837 (9th Cir. 1999). "Probable cause exists when, under the totality of the circumstances known to arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime." Id. (citation omitted); United States v. Carranza, 289 F.3d 634, 640 (9th Cir. 2002) (same).

Defendant Flores contends he was "merely present" at the scene of criminal activity. But that argument turns a blind eye to the facts adduced by the Government, which demonstrate coordinated activity between Flores and Fernandez over a period of hours to induce and encourage an illegal alien to enter the United States. As described above, agents observed Flores and Fernandez together in a residential neighborhood located immediately north of the International Boundary Fence that is notorious for alien smuggling. Through continuous surveillance, agents observed the following: (1) defendants entered the backyard of 806 Second Street together; (2) over the next several hours, Fernandez repeatedly went to a house on First Street and looked across the street toward the border fence while talking on a cell phone before returning to the backyard of 806 Second Street; (3) defendants exited the 806 Second Street backyard together in the middle of the night; (4) Fernandez returned to the First Street location and talked on a cellular phone while in the line of sight of a suspected smuggler on the south side of the border fence; (5) Fernandez motioned with his hand for the smuggler to move to the east and said, "We're ready, now, now;" (6) Flores proceeded to nearby

1  apartments in the direction that Fernandez told the suspected smuggler to move; (7) Flores maintained
2  a visual of the border fence and was talking on a cellular phone; (8) a suspected smuggler and one other
3  individual were on the south side of the border fence opposite Flores and in his line of sight; (9) Flores
4  motioned with his hands toward the individuals and said, "I'm here;" and (10) an illegal alien
5  subsequently climbed over the fence and ran to the location where Flores had been.

6  The totality of the circumstances amply demonstrates a fair probability that defendants Flores
7  and Fernandez were engaged in alien smuggling, and agents properly effectuated warrantless arrests.
8  Buckner, 179 F.3d at 837. Cf.United States v. Harrington, 626 F.2d 1182, 1186 (9th Cir. 1980)
9  (probable cause existed to arrest defendant for alien smuggling where officer performed investigatory
10 stop on defendant's van and saw aliens inside).

11 **2.    Defendant's statements are admissible**

12 A statement made in response to custodial interrogation is admissible under Miranda v. Arizona,
13 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the
14 statement was made after an advisement of rights and was not elicited by improper coercion.
15 See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs
16 voluntariness and Miranda determinations; valid waiver of Miranda rights should be found in the
17 "absence of police overreaching"). Although the totality of circumstances, including characteristics of
18 the defendant and details of the interview, should be considered, improper coercive activity must occur
19 for suppression of any statement. See id. (noting that "coercive police activity is a necessary predicate
20 to the finding that a confession is not 'voluntary'"); cf. Schneckloth v. Bustamonte, 412 U.S. 218, 226
21 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of
22 education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the
23 length of detention; the repeated and prolonged nature of the questioning; and the use of physical
24 punishment such as the deprivation of food or sleep.") (citations omitted). While it is possible for a
25 defendant to be in such a poor mental or physical condition that he cannot rationally waive his rights
26 (and misconduct can be inferred based on police knowledge of such condition, Connelly, 479 U.S. at
27 167-68), the condition must be so severe that the defendant was rendered utterly incapable of rational
28 choice. See United States v. Kelley, 953 F.2d 562, 564 (9th Cir.1992) (collecting cases rejecting claims

1  of physical/mental impairment as insufficient to prevent exercise of rational choice).

2  Here, the undisputed facts demonstrate that Defendant Flores knowingly and voluntarily waived his <u>Miranda</u> rights. Flores was arrested after 12:45 a.m. on December 10, 2007. He was advised of his <u>Miranda</u> rights shortly thereafter at approximately 3:16 a.m. Flores acknowledged that he understood his rights, and he agreed to answer questions without the presence of an attorney. The questioning was brief and ended at 3:37 a.m., approximately 20 minutes later. Simply put, agents complied with <u>Miranda</u>, and Flores fails to allege with any specificity that either the <u>Miranda</u> advisal or his ensuing waiver was improper.

The totality of circumstances further demonstrates that Flores's post-arrest statements were voluntary. Notwithstanding Flores's sparse and conclusory declaration, there is no evidence before the Court that he was subjected to coercive police activity. That agents questioned Flores for only 20 minutes less than two-and-one-half hours after his arrest reveals the fallacy underlying his contentions that he should have been given more than a burrito and a drink and that he should have been allowed to sleep prior to his brief questioning. <u>See</u>, <u>e.g.</u>, <u>Clark v. Murphy</u>, 331 F.3d 1062, 1073 (9th Cir. 2003) (upholding admission of statements where defendant was questioned over a five-hour period in a small room without toilet or water facilities). Based on this proffer by the Government, the Court can conclude by a preponderance of the evidence that Flores knowingly and voluntarily waived his <u>Miranda</u> rights and that his subsequent statements were made voluntarily. <u>See</u> <u>United States v. Howell</u>, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist.").

**C.   <u>No Opposition To Leave To File Further Motions</u>**

The Government does not object to the granting of leave to allow Defendant to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motions.

///
///
///

## IV

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court deny defendant's motions to compel discovery and suppress statements and evidence.

DATED: February 1, 2008.                    Respectfully submitted,

                                        Karen P. Hewitt
                                      United States Attorney

                                        s/ David D. Leshner
                                        DAVID D. LESHNER
                                        Assistant U.S. Attorney

|   |   |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 07-CR-3405-W |
| Plaintiff, | |
| v. | CERTIFICATE OF SERVICE |
| MARIO RAYMOND FERNANDEZ (1), | |
| ERNESTO FLORES-BLANCO (2), | |
| Defendants. | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IT IS HEREBY CERTIFIED THAT:

I, DAVID D. LESHNER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT FLORES-BLANCO'S MOTIONS TO: (1) DISCLOSE DISCOVERY; (2) SUPPRESS EVIDENCE AND STATEMENTS; AND (3) GRANT LEAVE TO FILE FURTHER MOTIONS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Timothy Garrison, Esq.

Sylvia Baiz, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 1, 2008.

/s/ David D. Leshner
DAVID D. LESHNER