**SYLVIA BAIZ**
California State Bar No. 124367
The Granger Building
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1410
Facsimile: (619) 544-1473

Attorney for Defendant **Flores-Blanco**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HON. THOMAS J. WHELAN**)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 07-CR-3405-W |
| Plaintiff, | ) ) ) | Trial Date: August 19, 2008 Time: 9:00 a.m. |
| v. | ) ) | **STATEMENT OF FACTS AND** |
| **ERNESTO FLORES-BLANCO,** | ) ) | **MEMORANDUM OF POINTS AND** **AUTHORITIES IN SUPPORT OF** |
| Defendant. | ) ) | **DEFENDANT'S MOTION IN LIMINE** |

**I.**

**STATEMENT OF FACTS**

According to government reports, on December 9, 2007 agents began surveillance in the neighborhood directly north of the U. S. Mexico border at about 5:00 p.m. At various times, one agent, Sedano, observed Mr. Flores being present or walking around the neighborhood. Mr. Flores lives at 806 Second Street, Calexico, California which is about 60 feet from the U.S./Mexico border and in the area where agents indicated they were conducting their surveillance. Agent reports say that agent Sedano saw Mr. Flores motion with his hands toward the border and say "I'm here" in Spanish. Reports indicate then that Mr. Flores saw agent Sedano and was startled and told someone on his cell phone that someone was there; then walked away. On that evening Mr. Flores was out in the neighborhood for various reasons, among which was the fact that he was putting out the trash for one of the neighbors who was out of town. Mr. Flores was later arrested two and a half blocks and around the corner from where the material witness was arrested. The

1  material witness who was arrested that night indicated that a friend of his made

2  arrangements to smuggle him into the United States.  He climbed over the U.S./Mexico

3  border fence and ran toward a person (whom he saw only as a shadow) who was supposed to

4  help him hide.  The material witness was then found hiding in some bushes and was arrested

5  by a border patrol agent.

6                                                    **II.**

7  **THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM PRESENTING**
   **HEARSAY STATEMENTS OF THE MATERIAL WITNESS ABOUT HIS**
8  **SMUGGLING ARRANGEMENTS AND ALIENAGE UNDER THE HEARSAY**
   **RULES AND *CRAWFORD*.**

9

10         A videotaped deposition was taken of Alejandro Portillo Mendoza, the only material

11  witness in the instant case on May 23, 2008.  A  motion hearing was held before the

12  magistrate on June 19, 2008 to determine whether the material would be released or detained

13  until the trial which was at that time scheduled for July 1, 2008.  The defendant's motion to

14  detain the material witness was denied and the witness was released with a letter from the U.

15  S. Attorney that the material witness was required to return to the United States for his

16  testimony at the trial.  Attached as exhibit A, is a copy of that letter.  The government also

17  gave him a subpoena for the trial date of July 1, 2008.  A short continuance was granted on

18  motion of Mr. Flores until July 8, 2008.  The government then moved for an additional

19  continuance due to scheduling of its witnesses which was granted so that the trial would not

20  begin until August 19, 2008.

21         On August 5, 2008 the government filed a document entitled, "United States'

22  submission of excerpts from material witness deposition." See docket entry 51.  It also

23  indicated, The United States intends to use some or all of the excerpts in its case-in-chief at

24  trial."  However, the government has made no showing that the material witness is

25  unavailable.

26

27

28

                                                    2

1
2
3

**A. The Government Should Be Precluded From Introducing Statements By The Material Witness Because Telephone Records Were Not Disclosed To The Defense Prior to the Deposition of the Material Witness**

4
5
6
7
8
9
10
11
12
13
14
15
16
17

The United States Supreme Court ruled that admitting at trial  statements of a witness made during post-arrest interrogation  was a violation of the Confrontation Clause.  The Supreme Court held in Crawford v. Washington, 124 S.Ct. 1354 (2004),  holds  pursuant to the Sixth Amendment, that pre-trial testimonial statements may not be admitted against a defendant at trial where the defendant has not had the opportunity to cross-examine the declarant.  Crawford, 124 S.Ct. at 1374.  This is true even where the statements fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness." Id. at 1369.  As such, this case overturned the Supreme Court's own precedent in Ohio v. Roberts, 448 U.S. 56 (1980). In Ohio v. Roberts, the Supreme Court concluded that the admission of hearsay statements does not violate the confrontation clause if the government shows that the witness is (1) unavailable and (2) the statement is reliable.  Id. at 65, 100 S.Ct. 2531.  Crawford overruled Ohio v. Roberts noting that "where testimonial evidence is at issue... the Sixth Amendment demands what the common law required:  unavailability and a prior opportunity for cross-examination." ____ U.S. ___, 124 S.Ct. at 1373.   The

18
19
20
21

Under Crawford, the Ninth Circuit no longer analyze alleged violations of defendants' confrontation clause rights based on "indicia of reliability," but instead focuses on unavailability and prior opportunity for cross-examination. United States v. Yida, 498 F.3d 945, 953 (9th Cir. 2007) citing Crawford v. Washington at 68.

22
23
24
25
26
27

Mr. Flores rights under the Sixth Amendment to confront and cross-examine the material witness would be violated in the instant case for several reasons.  The government may argue that Mr. Flores was not prejudiced because a video taped deposition was completed before the material witness was turned over to the Immigration Service for removal.  However, all discovery had not been disclosed prior to the material witness' deposition, including approximately 300 pages of telephone records

28

1

**B.    The Government Should Be Precluded From Presenting Evidence Of The Material Witness' Statements As There Has Been No Showing Of The Unavailability Of The Witness.**

2

3

The constitutional requirement that a witness be 'unavailable' stands on separate footing that is independent of and in addition to the requirement of a prior opportunity for cross-examination. *United States v. Yida, 498 F.3d 945, 950 (9th Cir. 2007)* (citations omitted). A witness is not "unavailable" for purposes of the hearsay exception for former testimony "unless the prosecutorial authorities have made a good-faith effort to obtain [the witness'] presence at trial." *Barber v. Page, 390 U.S. 719, 724-25, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968)*; *Windham v. Merkle, 163 F.3d 1092, 1102 (9th Cir. 1998)*; *People v. Smith, 30 Cal. 4th 581, 609, 134 Cal. Rptr. 2d 1, 68 P.3d 302 (2003)*, *cert. denied, 540 U.S. 1163, 124 S. Ct. 1169, 157 L. Ed. 2d 1208 (2004)* The prosecution must make such good faith efforts to locate a witness prior to trial. *See Jackson v. Brown, 513 F.3d 1057, 1084 (9th Cir. 2008)*.

In <u>United States v. Yida</u>, supra at 961, the Ninth Circuit held that both extra-circuit law and the plain language of *Rule 804(a)(5)* -- which requires the proponent of a statement to attempt to "procure the declarant's attendance . . . by process or other reasonable means" in order to establish "unavailability" -- supported a conclusion that the district court did not commit error when it assessed the totality of the government's actions, both before and after the witness' deportation to determine whether the government had employed "reasonable means" to establish unavailability of the witness under the Rule. The Ninth Circuit found that the government had not made reasonable efforts to secure the material witness' presence for tail and thus was not "unavailable under Rule 804(a)(5).

There as in the instant case, the material witness was deported. However, unlike this case, in <u>Yida</u> the witness had already testified at a previous trial as to the matters in a re-trial of the same case. Here, of course, the material witness had not testified at trial prior to being removed; only a deposition was taken. Nevertheless, Mr. Flores was unable to cross-examine the material witness in a meaningful way regarding telephone calls as Mr. Flores had not received the over 300 pages of telephone records prior to the deposition. The cross-

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

examination of the witness was thus not a meaningful as required by *Crawford*. Furthermore the material witness is unavailable in large part because the government removed him from the country and the Court should not now allow the government to reap the benefits of its own actions by allowing it to introduce transcripts or video tapes of the material witness' statements.

**C.  In the Alternative, the Government Should Be Precluded From Introducing the Transcripts or Video taped statements instead of live testimony.**

Underlying both the constitutional principles and the rules of evidence is a preference for live testimony. Live testimony gives the jury (or other trier of fact) the opportunity to observe the demeanor of the witness while testifying. William Blackstone long ago recognized this virtue of the right to confrontation, stressing that through live testimony, "and this [procedure] only, the persons who are to decide upon the evidence have an opportunity of observing the quality, age, education, understanding, behavior, and inclinations of the witness." 3 William Blackstone, *Commentaries on the Laws of England* 373-74 (1768). Transcripts of a witness's prior testimony, even when subject to prior cross-examination, do not offer any such advantage, because "all persons must appear alike, when their [testimony] is reduced to writing." *Id.* at 374. The superiority of live testimony as contrasted with a transcript of prior testimony has been equally praised in our own judicial system since its inception. *See, e.g., Mattox v. United States, 156 U.S. 237, 242-43, 15 S. Ct. 337, 39 L. Ed. 409 (1895)* ("The primary object of the constitutional provision in question was to prevent depositions . . .  being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."); *see also NLRB v. Universal Camera Corp., 190 F.2d 429, 430 (2d Cir. 1951)* ("[T]hat part of the evidence which the printed words do not preserve . . . . is the most telling part, for on the issue of veracity the bearing and delivery of a witness will

1   usually be the dominating factors. . . ."); *Broad. Music, Inc. v. Havana Madrid Rest. Corp.,*

2   *175 F.2d 77, 80 (2d Cir. 1949)* ("The liar's story may seem uncontradicted to one who merely

3   reads it, yet it may be contradicted . . . by his manner . . . which cold print does not

4   preserve.") (internal quotations omitted).

5       More recently, the United States Court of Appeals for the Third Circuit voiced the

6   importance of observing, first hand, a witness's demeanor while testifying:

7        Demeanor is of the utmost importance in the determination of the credibility of
        a witness. The innumerable telltale indications which fall from a witness during
8        the course of his examination are often much more of an indication to judge or
        jury of his credibility and the reliability of his evidence than is the literal
9        meaning of his words. Even beyond the precise words themselves lies the
        unexpressed indication of his alignment with one side or the other in the trial. It
10       is indeed rarely that a cross-examiner succeeds in compelling a witness to
        retract testimony which is harmful to his client, but it is not infrequently that he
11       leads a hostile witness to reveal by his demeanor -- his tone of voice, the
        evidence of fear which grips him at the height of cross-examination, or even
12       his defiance -- that his evidence is not to be accepted as true, either because of
        partiality or overzealousness or inaccuracy, as well as outright untruthfulness.
13       The demeanor of a witness, as Judge Frank said, is 'wordless language.'

14
15   Aquino, 378 F.2d at 548 (quoting *Broad. Music, 175 F.2d at 80*).

16       Furthermore, first, witnesses who testify live at the current trial speak testify as of the current

17   time, while witness testimony via transcript speaks as of the time of the prior proceeding, and

18   cannot be updated.  The defense can only use recently acquired information in cross-examining

19   a witness if that testimony is live. The ability to cross-examine a witness at trial using the most

20   current investigative information available cuts to the heart of the *Sixth Amendment's*

21   *confrontation clause*. Second, witnesses who testify at both proceedings may expose

22   inconsistencies between the two versions of their testimony, that can be exploited by the adverse

23   party during cross-examination at the second proceeding, but witnesses whose prior testimony

24   is introduced through a transcript at the current trial do not. Again, the core of the accused's right

25   to confront the witnesses against him is implicated. *See* Yida at 951 (additional cites omitted).

26   Finally, allowing the prosecution to present a transcript, rather than live testimony, may lead to

27   the presentation of that transcript when live testimony is vulnerable for the prosecution's case,

28   which is the case here since, the material witness did not identify Mr. Flores as his smuggler nor

was he sure of arrangements made on his behalf for his unlawful entry and transportation.

Federal Rule of Evidence 804(a)(5) provides that a declarant is unavailable as a witness if he "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other *reasonable means*." *Fed. R. Evid. 804(a)(5)* (emphasis added). These reasonable means must be "genuine and bona fide." *Gov't of the Virgin Is. v. Aquino, 378 F.2d 540, 552, 6 V.I. 395 (3d Cir. 1967)*; *see also United States v. Lynch, 163 U.S. App. D.C. 6, 499 F.2d 1011, 1023-24 (D.C. Cir. 1974)*; *cf. Phillips v. Wyrick, 558 F.2d 489, 494 (8th Cir. 1977)* (requiring that a good faith effort be made as a component of the *Sixth Amendment* right to confrontation). Prosecutors must not only act in good faith but also operate in a competent manner; a prosecutor cannot claim that a witness is unavailable because the prosecutor has acted in an "empty-head pure-heart" way. *See Fed. R. Civ. P. 11* advisory committee's note. *See also California v. Green, 399 U.S. 149, 189 n.22, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970)* (Harlan, J., concurring); *United States v. Wilson, 36 F. Supp. 2d 1177, 1180 (N.D. Cal. 1999)* ("The central constitutional inquiry is whether or not the government's actions were reasonable given all the circumstances of a particular case."). Thus, "[e]ven where the absent witness is beyond the court's jurisdiction, 'the government must show diligent effort on its part to secure the (witness') voluntary return to testify.' " *United States v. Mann, 590 F.2d 361, 367 (1st Cir. 1978)* (quoting *Aquino, 378 F.2d at 551*).

This case turns on the meaning of "reasonable means" used by the government to secure the witness' presence for trial, but more importantly the fact that the government precluded meaningful cross examination at the deposition by not disclosing telephone records prior to the deposition.  Thus, the government should be precluded from introducing any of the material witnesses statements in violation of *Crawford*.

**III.**

7

1

2

**THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING HEARSAY EVIDENCE OF TELEPHONE RECORDS OF THIRD PARTIES OR OF THE CELL PHONE FOUND ON MR. FLORES**

3

4    It is anticipated that the government will attempt to introduce telephone records

5    belonging to persons other than Mr. Flores in the instant case.  Or, that Mr. Flores may have

6    been speaking with other persons around the time of his arrest.  These third parties are not

7    known by the government to be involved in the instant case or related in any way to Mr.

8    Flores..

9    **A.    Evidence of Telephone Records Belonging to Unrelated Third Persons Is Not Relevant**

10

11    In order for evidence to be admissible it must first be relevant pursuant to Federal

12    Rule of Evidence 401 provides, "'[r]elevant evidence means having any tendency to make

13    the existence of any fact that is of consequence to the determination of the action more

14    probable or less probable than it would be without the evidence."  The fact that Mr. Flores

15    may have telephoned someone on the evening of his arrest or that a third person may have

16    telephoned him on that evening is completely irrelevant without more.  Evidence of

17    unrelated telephone records should be excluded.  The only reason to include such irrelevant

18    evidence would be so that the government can argue that Mr. Flores had a telephone on his

19    person and spoke to someone on a telephone about who knows what on the evening of his

20    arrest.

21    **B. Even If The Court Deems The Evidence Relevant It Should Be Excluded on Grounds of Prejudice.**

22    Federal Rule of Evidence 403 provides, "[a]lthough relevant, evidence may be

23    excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

24    confusion of the issues, or misleading the jury [sp], or by considerations of undue delay,

25    waste of time, or needless presentation of cumulative evidence."  Here, the only possible

26    reason for the government to introduce evidence of the unrelated telephone records is so that

27    the government may argue that he must have used the phone to contact smugglers about the

28

1    undocumented person arrested on the same night.

2        Therefore, Mr. Flores requests that evidence of any phone records unrelated to the

3    instant case be excluded at trial.

4    **IV.**

5    **EVIDENCE OF "BAD ACTS" SHOULD BE EXCLUDED.**

6    Federal Rule 404(b) reads as follows:

7

8        **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts
     is not admissible to prove the character of a person in order to show action in
     conformity therewith. It may, however, be admissible for other purposes, such

9    as proof of motive, opportunity, intent, preparation, plan, knowledge, identity,
     or absence of mistake or accident, provided that upon required by the accused,

10   the prosecution in a criminal case shall provide reasonable notice in advance of
     trial, or during trial if the court excuses pretrial notice on good cause shown, of

11   the general nature of any such evidence it intends to introduce at trial.

12       The government has provided a notice that it intends to introduce 404(b) evidence

13   against Mr. Flores regarding other dates on which Mr. Flores was arrested, but not

14   convicted, including: **July 29, 2007, March 12, 2007, January 30, 2006 and December 5,**

15   **2005 and September 5, 2005**. Arrest reports for those dates were supplied. On July 29,

16   2007 two persons were seen climbing over the border fence by agents. Agents saw the

17   persons get into a white pick up. The white pick up was stopped, but only Mr. Flores, who

18   was driving, was inside. Two persons were found walking in the surrounding

19   neighborhood. The person said they had been in a white pick up. On March 12, 2007 border

20   patrol agents saw 9 persons get into a jeep Cherokee near the I-8. Agents followed the jeep,

21   the jeep pulled over and all the persons got out and ran. None of the persons could identify

22   the driver. Mr. Flores was found to be "not of sound state of mind." On January 30, 2006

23   two persons climbed over the border fence. Agents saw them pass through a fence and

24   observed another individual lead them to the side of a house through a chain link fence.

25   This third individual was later identified as Mr. Flores whom agents said "led" the two

26   persons to the fence on the side of the house. The two persons did not say that they knew

27   Mr. Flores or that he was assisting them. On December 5, 2005, two persons passed

28

1    through a hole in the border fence.  They ran north and were waived into a house at 744 2nd

2    Street by a person later identified by agents as Francisco Rios (not Mr. Flores' or his home).

3    Mr. Flores was present in the house.  Agents stated that they found the front "door was

4    open" and that a man and woman were attempting to flee out the door.  The male was

5    identified as Ernesto Flores and that he "attempted to conceal the female behind the door."

6    Francisco Rios, Mr. Flores and two other persons were arrested. On September 5, 2005

7    border patrol found a person inside the trunk of a car lent to Mr. Flores. Mr. Flores stated he

8    did not know the person was in the trunk.

9    **A. 404(b) Evidence Must be Excluded.**

10        In this country it is a settled and fundamental principle that persons charged with crimes must

11    be tried for what they allegedly did, not for who they are.  See United States v. Hodges, 770 F.2d

12    1475, 1479 (9th Cir. 1985).  The Ninth Circuit Court of Appeals has observed:

13        Under our system, an individual may be convicted only for the offense of which he is
         charged and not for other unrelated criminal acts which he may have committed.
14        Therefore, the guilt or innocence of the accused must be established by evidence
         relevant to the particular offense being tried, not by showing that defendant engaged
15        in other acts of wrongdoing.

16    Id.

17        No matter how vile or despicable a person may appear to be, he or she is entitled to a fair

18    trial.  Id.  Constitutional provisions clearly provide that individuals may only be convicted for the

19    crimes with which they are charged; they may not be subject to criminal conviction merely because

20    they have a detestable or abhorrent background.  Id.  "Our entire system of justice would deteriorate

21    if we did not jealously protect these constitutional safeguards for **all** citizens." South Dakota v.

22    Moeller, 548 N.W. 2d 465, 468 (S.D. 1996) (referring to prior acts evidence).

23        Mr. Flores moves to exclude evidence of his prior arrests by border patrol for alien smuggling

24    under two theories.  First, Mr. Flores's prior arrests do not fit within the definition of 404(b) under

25    existing Ninth Circuit law.  See United States v. Bibo-Rodriguez, 922 F.2d 1398, 1400 (9th Cir.);

26    cert. denied, 501 U.S. 1234 (1991) (Evidence of prior criminal conduct may be admitted to prove

27    knowledge if only if all four prongs of four part test are met by the government).  Second, if this

28

1  court determines that Mr. Flores's prior conviction is admissible pursuant to 404(b), Mr. Flores

2  maintains that the "probative value" of the prior conviction "is substantially outweighed by the

3  danger of unfair prejudice" and the admission of such evidence would be a violation of both Mr.

4  Flores's Fifth Amendment Due Process right, and his Sixth Amendment right to a fair trial.

5  **B. Exclusion of Prior Alien Smuggling Conviction as Irrelevant And Not Similar.**

6  The government will seek to introduce evidence of Mr. Flores's prior alien smuggling

7  conviction under the guise of Rule 404(b), evidence of knowledge.  The government's use of this

8  evidence will be simply a veiled attempt to introduce propensity evidence.

9  Fed. R. Evid. 404(b) states in relevant part -

10  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.  It may, however, be admissible

11  for other purposes, such as proof of . . .intent. . . [or] knowledge, provided that upon
request by the accused, the prosecution in a criminal case shall provide reasonable notice

12  in advance of trial.

13  Fed. R. Evid. 404(b).  Rule 404(b) strictly forbids use of evidence of prior crimes or bad acts

14  merely to prove bad character.  United States v. Garcia-Orozco, 997 F.2d 1302, 1303-04 (9th Cir.

15  1993).  The use of evidence pursuant to this rule "must be narrowly circumscribed and limited" and

16  "may not be introduced unless the government establishes its relevance to an actual issue in the

17  case."  Id. at 1304 (citing United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985)).  The

18  purpose of Rule 404(b) is to "avoid a danger that the jury will punish the defendant for offenses other

19  than those charged, or at least that it will convict when unsure of guilt, because it is convinced that

20  the defendant is a bad man deserving of punishment."  United States v. Hill, 953 F.2d 452, 457 (9th

21  Cir. 1991).

22  However, evidence of prior criminal conduct may be admitted to prove knowledge under

23  Rule 404(b) only if the government establishes (1) the other act evidence tends to prove a material

24  point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding

25  that the defendant committed the other act; and (4) the other act is similar to the offense charged.

26  Bibo-Rodriguez, 922 F.2d at 1400.  When the government's theory of admission under Fed. R. Evid.

27  404(b) is knowledge, "the government must prove a logical connection between knowledge gained as

28

1  a result of the commission of the prior act and the knowledge at issue in the charged act." <u>United</u>

2  <u>States v. Mayans</u>, 17 F.3d 1174, 1181-82 (9th Cir. 1994) (citing <u>United States v. Hernandez-</u>

3  <u>Miranda</u>, 601 F.2d 1104 (9th Cir. 1979)).  Evidence of a prior arrest is not admissible where the

4  evidence is that the defendant was convicted of the same offense as the current charge, but rather the

5  prior conviction becomes relevant and admissible where the same offense was committed in a

6  similar way.  <u>Id.</u>  The government must specifically articulate the basis for the admission of the

7  evidence and why it is relevant.

8      <u>Hernandez-Miranda</u>, is a case indistinguishable from the instant case, and is an example of

9  where the government failed to demonstrate the relevance of a prior conviction.  In <u>Hernandez-</u>

10  <u>Miranda</u> the defendant had been convicted of smuggling marijuana in a backpack across the border.

11  <u>See</u> 601 F.2d at 1107.  In the defendant's new case the allegations were that he was smuggling heroin

12  across the border that had been concealed in a car.  <u>Id.</u> at 1105.  The Ninth Circuit determined it was

13  error to permit introduction of the prior conviction because the government failed to articulate the

14  relevance.  <u>Id.</u>  A "logical thread" between the two offenses was required.  <u>Id.</u> at 1108.  The Ninth

15  Circuit determined that the prior offense was only relevant if "common human experience

16  demonstrates that it is more probable than not that a person who has knowingly smuggled marijuana

17  on his person will know of the presence of contraband concealed in a vehicle."  <u>Id.</u>  The common

18  thread of just "smuggling" was not enough to bring the offense within the exception of Rule 404(b).

19  <u>Id.</u> at 1108.  More of a connection was required.  The Ninth Circuit noted it would be reasonable to

20  infer that "a person who has knowingly smuggled marijuana in a backpack across the border on one

21  occasion will know that he is carrying marijuana in his backpack when he is caught carrying

22  marijuana in the same way as he crosses the border on a later occasion."  <u>Id.</u> at 1108-09.  However,

23  the Ninth Circuit concluded that the sole similarity between the offenses was that contraband was

24  being smuggled across the border, and because the way the prior act was committed was dissimilar

25  to the current charged conduct, the prior conviction was irrelevant to the issue of knowledge.  <u>Id.</u>

26      In principle, the instant case is indistinguishable from <u>Hernandez-Miranda</u>.  In this case, as in

27  <u>Hernandez-Miranda</u>, the sole similarity between the alleged prior bad acts and the instant offense is

28

1  that they arguable involve the presence of undocumented persons.   In the alleged prior bad acts

2  offenses, the government asserts that at one time;  1) Mr. Flores was the driver of a vehicle in which

3  border patrol agents say he was attempting to transport two undocumented persons sometime after

4  they had crossed the border, 2) that he was the driver of a car which had eight undocumented people

5  in it after it retrieved them near Interstate 8; 3) or that he was present at a neighbor's house when that

6  neighbor attempted to conceal persons who had just climbed over the border fence; or 4) that two

7  persons who had climbed over the border fence went through a fence into Mr. Flores' back yard and

8  that he lead them out of his yard; or, 5) that he was the driver of a car which contained a person in

9  the trunk.  These alleged prior bad acts are significantly dissimilar to the conduct than he is currently

10  charged with.  Moreover, Mr. Flores' defense is that he was not involved in the smuggling of the

11  material witness in this case, not that he did not know what was going on.  Furthermore, at least as to

12  the alleged act of December 5, 2005, when he supposedly "led" two persons out of his back yard and

13  he was not prosecuted, there is no evidence that he encouraged or harbored them or even conspired

14  with anyone to smuggle them.  He only attempted to get them out of his yard, not harbor them.

15      In this case, there is no "logical thread" between the prior alleged offenses as required by

16  Hernandez-Miranda.  Although the evidence of Mr. Flores's prior arrests may be relevant to

17  demonstrate his predisposition to the commission of the instant offense, this is an impermissible

18  ground for introduction of the evidence.  Hernandez-Miranda, 601 F.2d at 1108 (impermissible to

19  allow 404(b) evidence based upon the theory that a person who has shown an inclination to smuggle

20  contraband across the border on one occasion may be inclined to do so on another).

21      In order for the government to establish a "logical thread" or "common thread", the similarity

22  between the two offenses must be "striking" and "undeniable."  United States v. Rubio-Villareal, 927

23  F.2d 1495 (9th Cir. 1991) (defendant charged with importing cocaine that was contained in a secret

24  compartment and the Ninth Circuit upheld admission of a prior conviction for importing marijuana

25  that was located in a secret compartment); Bibo-Rodriguez, 922 F.2d 1398 (upholding introduction

26  of evidence where the defendant was charged with importing cocaine in a secret compartment in a

27  vehicle across the border, and had subsequently found to be transporting marijuana across the border

28

1   in a secret compartment, to prove the defendant's knowledge of the contraband); <u>United States v.</u>

2   <u>Longoria</u>, 624 F.2d 66 (9th Cir. 1980) (prior conviction for alien smuggling in a taxicab admissible

3   where current charges were for alien smuggling in a taxicab). The similarities in this case are not

4   "striking" or "undeniable." What is undeniable is only that Mr. Flores was previously arrested (not

5   even convicted). However, the prior acts are not relevant to demonstrate knowledge because the

6   common thread of "smuggling" is not enough to bring the offense within the exception of Rule

7   404(b). <u>Id.</u> at 1108. Had the material witness in this case been transported in Mr.Flores's vehicle

8   then under <u>Hernandez-Miranda</u>, <u>Rubio-Villareal</u>, <u>Bibo-Rodriguez</u>, and <u>Longoria</u>, the evidence would

9   arguably be admissible.

10      **C. Predjuce under Evidence Code 403**

11          Federal Rule of Evidence 403 provides, "[a]lthough relevant, evidence may be

12   excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

13   confusion of the issues, or misleading the jury [sp], or by considerations of undue delay,

14   waste of time, or needless presentation of cumulative evidence." Here, the introduction of

15   this 404(b) evidence as substantive evidence of the conspiracy to bring in an undocumented

16   person is extremely prejudicial, and is thus admissible only in specific extraordinary

17   circumstances. <u>U.S. v. Beltran-Rios</u>, 878 F.2d 1208, 1211 (9th Cir. 1989). <u>See also</u>, <u>United</u>

18   <u>States v. Lui</u>, 941 F.2d 844, 848 (9th Cir. 1991) (reversed due to introduction of

19   impermissible profile evidence).

20          This evidence is so extremely prejudicial that its probative value is substantially

21   outweighed by the danger of unfair prejudice.

22                                  **V.**

23      <u>**THE COURT SHOULD EXCLUDE EXPERT TESTIMONY**</u>
        <u>**ON "ALIEN SMUGGLING ORGANIZATIONS**</u>
24

25          Mr. Flores received a written letter which states, generally, that the government intends to

26   call Border Patrol agent Paul Lewenthal, "an expert in alien smuggling methods of operation..." Mr.

27   Lewenthal will testify regarding "the modus operandi of alien smuggling organizations in the

28   Calexico area, the coordination of smuggling ventures, and the operation of these ventures for

1  financial gain."

2        The letter does not comply with the requirements of Federal Rule of Criminal Procedure 16

3  and as explained below, this evidence should also be excluded pursuant to Federal Rules of Evidence

4  402, 403, and 704.  At a bare minimum, he asks that this information be immediately produced to

5  afford preparation for a <u>Daubert</u>/<u>Kumho</u> hearing.

6    **A.  <u>Experts Cannot Testify Regarding the Ultimate Issue.</u>**

7        Although it is not clearly specified, one of the major reasons that the government  seeks to

8  introduce testimony regarding "financial gain" is to demonstrate that if a person assists an

9  undocumented person,  the defendant must commit the offense for financial gain or the "no one does

10  this for free" argument.  Also likely, is the government's parallel argument to drug cases that

11  smuggling is a business, therefore an organization would never entrust valuable merchandise, here a

12  human being, The Federal Rules of Evidence and controlling case law, however, specifically forbid

13  this chain of inference in the form of expert testimony.

14        Rule 704 provides:

15        No expert witness testifying with respect to the mental state or condition of a
         defendant in a criminal case may state an opinion or inference as to whether the
16        defendant did or did not have the mental state or condition constituting an element of
         the crime charged or of a defense thereto.  Such ultimate issues are matters for the
17        trier of fact alone.

18  Fed. R. Evid. 704.

19    **B.  <u>The Government Should Not Be Able to Create Their Own "Organization"</u>**

20        In <u>United States v. Vallejo</u>, 237 F.3d 1008 (9th Cir. 2001), <u>amended</u>, 246 F.3d 1150 (9th Cir.

21  2001), the Ninth Circuit held that structure testimony is inadmissible in a non-complex, non-

22  conspiracy drug smuggling case.  As the Court wrote, "[t]o admit this testimony on the issue of

23  knowledge, the only issue in the case, was unfairly prejudicial, and an abuse of discretion under Rule

24  403." <u>Id.</u> at 1017.  Here, the government simply arrested Mr. Flores and the co-defendant for

25  attempting to harbor an undocumented person who climbed over the U. S. Mexico border and

26  charged them with conspiracy.   There is no evidence of wiretaps, a confidential informant, or any

27  other information of a particular "alien smuggling organization" to which Mr. Flores and Mr.

28

Fernandez are connected.  The government, in essence, is creating their own organization or structure.  Now, after creating an organization, they want an expert to bolster their creation.  This testimony essentially seeks to assume out of existence the key issue in this trial whether Mr. Flores was involved in smuggling one person.  Such testimony is improper and must be excluded.

## C. The Court Must Not Allow Modus Operandi Testimony or Alien Smuggler Profile Testimony

The majority of Ninth Circuit law on this matter relates to drug courier profile evidence.  However, the cases are easily applicable to alien smuggling profile testimony.  The Ninth Circuit has forbidden the use of drug courier profile evidence in most cases.

> Drug courier profiles are inherently prejudicial because of the potential they have for including innocent citizens as profiled drug couriers . . ..  Every defendant has a right to be tried based on the evidence against him or her, not on the techniques utilized by law enforcement officials in investigating criminal activity.  Drug courier profile evidence is nothing more than the opinion of those officers conducting an investigation . . ..  [W]e denounce the use of this type of evidence as substantive evidence of the defendant's innocence or guilt.

United States v. Beltran-Rios, 878 F.2d 1208, 1210 (9th Cir. 1989) (internal quotations omitted).

Likewise, the Court must preclude expert testimony by agents on alien smuggling courier profile to explain the modus operandi of the defendant.  Tellingly, the Ninth Circuit has held that drug courier profile evidence is improper to show modus operandi in a *multiple-defendant drug conspiracy*.  See United States v. Lim, 984 F.2d 331, 335 (9th Cir. 1993).  The Ninth Circuit also has held modus operandi testimony improper in a case that stems from an arrest at the international border.  Vallejo, 237 F.3d at 1017.  In fact, the Ninth Circuit has stated repeatedly that although the Court may admit modus operandi testimony in *complex* drug smuggling *conspiracies*, such testimony is not appropriate where a complex criminal scheme does not exist.  United States v. Cordoba, 104 F.3d 225, 229-230 (9th Cir. 1997); United States v. Lui, 941 F.2d 844, 848 (9th Cir. 1991).

In the instant case, the conspiracy alleged could not be characterized as complex.  It was one person attempting to smuggle another person.  Here, the government has no evidence linking Mr.Flores  with a vast smuggling organization. The government has no need to explain a complex criminal scheme to prosecute Mr. Flores

1. Notice / Discovery

1    The proffered structure/modus operandi testimony should be precluded based on the

2    government's failure to provide discovery.  The only "discovery" the government has produced

3    regarding the proposed structure expert is an intent to call an agent to testify   In <u>United States v.</u>

4    <u>Fort</u>, 472 F.3d 1106 (9th Cir. 2007), the Ninth Circuit recently held that "materials on which a

5    proposed expert witness relies [in developing his opinions] must be produced to Defendants in

6    discovery."  <u>Id.</u> at 1121.  This is so even if the materials would otherwise be protected under the

7    federal rules.  <u>Id.</u>

8        2.    *<u>Brady v. Maryland</u>*<u>, 373 U.S. 83 (1963) and its progeny require disclosure that has not</u>
9              <u>been provided.</u>

10    Mr. Flores is entitled to and moves for a copy of all documents, statements, agents' reports,

11    and tangible evidence favorable to Defendant on the issue of guilt or which affects the credibility of

12    the Government's witnesses and case.  Under <u>Brady</u>, impeachment and exculpatory evidence

13    constitutes evidence favorable to the accused.  <u>See United States v. Bagley</u>, 473 U.S. 667, 676-78

14    (1985); <u>United States v. Agurs</u>, 427 U.S. 97, 102-06 (1976).

15        3.    <u>Federal Rules Require Disclosure of Expert Opinion.</u>

16    In <u>United States v. Zanfordino</u>, 833 F. Supp. 429 (S.D. N.Y. 1993), the defense requested

17    discovery regarding the basis of the expert's testimony.  The district court granted the request, noting

18    that a cross examination conducted without that information implicated due process and the

19    Confrontation Clause.  <u>Id.</u> at 432-33.  "If an expert is testifying based in part on undisclosed sources

20    of information, cross-examination vouchsafed by that Clause would be unduly restricted."  <u>Id.</u>

21    Federal Rule of Criminal Procedure 16, <u>Jencks</u>, and Federal Rule of Evidence 705.  <u>Id.</u> at 432-33.[1]

22    Rule 16 requires disclosure of "the bases and reasons for [the expert's] opinions."  FED. R. CRIM. P.

23    16(a)(1)(E).  The Federal Rules of Evidence impose a similar requirement:  "The expert may in any

24    event be required to disclose the underlying facts or data on cross-examination."  FED. R. EVID. 705.

25    _____

26        [1]The government may argue that the amount of material it is obligated to produce might
     be large.  Even so, the fact that the material may be voluminous is not a basis for declining to
27    order the necessary disclosure.  <u>See</u> <u>United States v. Roark</u>, 924 F.2d 1426, 1430-32 (8th Cir.
     1991); <u>United States v. Allen</u>, 798 F.2d 985, 1000 (7th Cir. 1986).
28

17

1   As the Zanfordino court observed, "delaying such disclosure until [cross examination] would merely

2   prolong the trial."  833 F.Supp. at 433.  Information relied upon by an expert is clearly Jencks

3   material, particularly when the information takes the form of reports written or adopted by the

4   expert.  See 18 U.S.C. § 3500(a), (e)(1); see also Fed. R. Civ. P. 26(b)(4) (adversary may obtain

5   information to be relied upon by the expert).

6           Likewise, as noted above, Federal Rule of Criminal Procedure 16 plainly requires the govern-

7   ment to disclose the bases of its expert's opinions.  This disclosure is separate and *in addition to*

8   disclosure of a summary of "the witness's opinions" and "the witnesses qualifications," which the

9   rule also requires.  FED. R. CRIM. P. 16(a)(1)(G).  When the rule was amended in 1993 to expand the

10  scope of Rule 16(a)(1)(G) to require "disclosure of the intent to rely on expert opinion testimony,

11  what the testimony will consist of, and the bases of the testimony," the Advisory Committee

12  addressed the constitutional and pragmatic concerns undergirding the amended rule:

13
14          The amendment is intended to minimize surprise that often results
            from unexpected expert testimony, reduce the need for continuances,
15          and to provide the opponent with a fair opportunity to test the merits of
            the experts' testimony through focused cross-examinations.
16

17  FED. R. CRIM. P. 16, Advisory Comm. Notes, 1993 Amendment.  Importantly, the Advisory

18  Committee specified precisely what the rule means by "bases of the testimony" to ensure that the

    rule would have the intended effects:
19
20          Third, and perhaps most important, the requesting party is to be
            provided with a summary of the bases of the expert's opinion.  . . . .
21          Without regard to whether a party would be entitled to the underlying
            bases for expert testimony under other provisions of Rule 16, the
22          amendment requires a summary of the bases relied upon by the expert.
            That should cover not only *written and oral reports, tests, reports and*
23          *investigations*, but *any information* that might be recognized as a
            legitimate basis for an opinion under Federal Rule of Evidence 703,
24          including opinions of other experts.

25  Federal Rule of  Criminal Procedure 16, Advisory Comm. Notes, 1993 Amendment (emphasis

26  added).  In other words, the party proffering the expert must provide substantive and comprehensive

27  discovery — the discovery necessary to give the "opponent . . . a fair opportunity to test the merits of

28  the expert's testimony through focused cross examinations (including "written and oral reports, tests,

1    reports, and investigations" where applicable). The summary conclusions and curriculum vitae

2    defense counsel anticipates the government will produce, sometime in the next two weeks, do not

3    come close to satisfying the rule. See, e.g., Zanfordino, 833 F. Supp. at 432-33.

4        Here, any proposed experts would rely upon materials not yet produced to the defense,

5    including reports and various reference materials. All of this information should have been produced

6    weeks ago, in part because, "[i]f an expert is testifying based in part on undisclosed sources of

7    information, cross-examination vouchsafed by [the Confrontation] Clause would be unduly

8    restricted." Zanfordino, 833 F. Supp. at 432. Mr. Flores's right to confront and cross examine the

9    witnesses, guaranteed by the Sixth Amendment and effectuated by the discovery rules, will not

10   merely be "unduly restricted" absent disclosure of the bases of the opinions, it will be eviscerated.

11   Because trial is fast approaching, and no discovery has been provided, any experts the government

12   proposes should be excluded.

13        4.    The testimony is not relevant

14       The proffered structure/modus-operandi testimony should be precluded on the additional

15   ground that the government has failed to establish the testimony's relevance under Federal Rules of

16   Evidence 401, 402, and 403. In Daubert v. Merrell Dow Pharms, Inc., 509 U.S. 579, 591 (1993), the

17   Supreme Court stressed that expert testimony must have a valid connection to the issues presented.

18   See also FED. R. EVID. 401, 402, 403 (only relevant evidence is admissible). Furthermore, "[w]hen

19   the relevance of evidence depends upon the fulfillment of a condition of fact, the court shall admit it

20   upon, or subject to, the introduction of evidence of sufficient to support a finding of the fulfillment

21   of the condition." FED. R. EVID. 104(b).

22       Here, the proposed testimony only is relevant if it tends to prove the existence of a fact at

23   issue (FED. R. EVID. 401)  However, **the government has proffered nothing to suggest that the**

24   **structure expert's generalized knowledge regarding narcotic trafficking organizations has any**

25   **link whatsoever to** Mr. Flores. Before the government's expert can opine regarding smuggling in

26   general, the Court must assure itself that the testimony has a valid connection to Mr. Flores's case

27   beyond giving the prosecutor a mouthpiece for his prosecution theory. Thus, Mr. Flores requests that

28

1  the court conduct a Rule 104 preliminary question hearing outside the presence of the jury to

2  determine whether there are sufficient facts linking the expert's testimony to this case.  Cf. Murillo,

3  255 F.3d at 1178 (recognizing the Supreme Court's continued emphasis on the trial court's broad

4  discretion in assessing the relevance and reliability of expert testimony).

5           5.    Rule 403 requires preclusion of expert testimony here.

6           In addition, the Court should preclude the proffered structure/modus-operandi testimony

7  because its "probative value is substantially outweighed by the danger of unfair prejudice, confusion

8  of the issues, or misleading the jury . . ." FED. R. EVID. 403.  In the end, the government's proffered

9  testimony is little more than the prosecutor's theory of the case through a witness with "expert"

10  status.  The expert's proposed opinion that Mr. Flores was present for the purpose of smuggling the

11  material witness is, of course, this is *the issue* for the jury to decide in this case.  See FED. R. EVID.

12  704.  To acquit Mr. Flores, the jury will have to disagree with the government's expert in every

13  respect.  It is hard to imagine what "evidence" would be more prejudicial, confusing, or misleading

14  than this testimony.  The testimony should be excluded.

15           6.    The Fifth and Sixth Amendments Require Comprehensive Disclosure of the Bases of
                   the Proposed Expert's Opinion.

16
17           Finally, in the case of a criminal defendant like Mr. Flores, Rule 16 safeguards important

18  constitutional rights that could easily be eviscerated were the government allowed to put on expert

19  testimony without giving the defense a meaningful opportunity to test the proposed evidence and

20  respond.  As noted above, the constitutional due process guarantee of a fair trial confers a meaningful

21  opportunity to present a complete defense.  Of course, these guarantees are meaningless if the

22  government can put on expert testimony with an unknown — and therefore unassailable — factual

23  basis and methodology.  As the Ninth Circuit recognized:  "'The *central concern of the*

24  *Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by*

25  *subjecting it to rigorous testing* in the context of an adversary proceeding before the trier of fact.'"

26  Murdoch v. Castro, 365 F.3d 699, 702 (9th Cir. 2004) (emphasis in original) (quoting Maryland v.

27  Craig, 497 U.S. 836, 845 (1990)).  Additionally, "[o]ne longstanding purpose of cross examination is

28  to expose to the fact-finder relevant and discrediting information."  Id.  Because only comprehensive

discovery regarding the bases of the proposed expert's opinion will allow Mr. Flores to subject the proposed testimony to "rigorous testing" and "expose to the fact-finder relevant and discrediting information," only comprehensive discovery regarding the bases of the proposed expert's opinion will allow Mr. Flores to exercise his constitutional rights.

The unique posture of this case makes complete expert discovery particularly important to Mr. Flores's defense. Unless the government has additional evidence it has not yet disclosed to the defense, it appears that the government's proposed expert testimony will be a cornerstone of its case. Mr. Flores exculpatory statements were suppressed. The government has no physical evidence tying Mr. Flores to the material witness, beyond the fact that several minutes prior to the entry of the material witness into the United States, Mr. Flores was in the area (which is the alley behind his house). Under these circumstances, the government has no choice but to rely on seemingly innocuous circumstantial evidence. Given that the proposed expert's proposed testimony will be a cornerstone of the government's case, it will be critical to Mr. Flores's defense that he rebut and put into context this evidence. Without discovery of the bases of the expert's opinions, Mr. Flores will have no way to explore — or even question — the reliability of those opinions. His defense will be gutted, and absent extensive discovery and an opportunity to rebut the "expert's" testimony, such testimony must be excluded at this late date.

In the event the Court permits the government to introduce expert testimony, the defense respectfully requests the opportunity to voir dire the experts out of the presence of the jury regarding their qualifications and the bases of their opinions and to litigate Daubert/Kumho issues as they arise.

## VI.

## CONCLUSION

For the foregoing reasons, Mr. Flores-Blanco respectfully requests that the Court Flores his motions.

Respectfully submitted,

Date: August 13, 2008

/s/ Sylvia Baiz
**SYLVIA BAIZ**

1                                                          Attorney for Mr. Flores-Blanco
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28