KAREN P. HEWITT
United States Attorney
DAVID D. LESHNER
Assistant U.S. Attorney
California State Bar No. 207815
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7163
David.Leshner@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>MARIO RAYMOND FERNANDEZ (1),<br><br>ERNESTO FLORES-BLANCO (2),<br><br>                Defendants. | Criminal Case No. 07-CR-3405-W<br><br>DATE:  August 19, 2008<br>TIME:   9:00 a.m.<br><br>**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT ERNESTO FLORES-BLANCO'S MOTIONS IN LIMINE** |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and David D. Leshner, Assistant United States Attorney, and hereby files its response and opposition to defendant Ernesto Flores-Blanco's motions in limine. Said response and opposition is based upon the files and records of this case together with the attached memorandum of points and authorities.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I**

**INTRODUCTION**

At 11:30 p.m. on August 13, 2008, defendant Ernesto Flores-Blanco filed motions in limine to (1) exclude the deposition testimony of material witness Alejandro Portillo-Mendoza; (2) exclude cellular telephone records; (3) exclude Rule 404(b) evidence; and (4) exclude expert testimony. Each of Defendant's untimely motions lacks merit.

**II**

**ARGUMENT**

**A.    Motion To Exclude Material Witness Testimony**

  **1.    Procedural history**

On April 22, 2008, the Honorable Jan M. Adler granted the motion of material witness Alejandro Portillo Mendoza for a videotaped deposition. The deposition took place on May 23, 2007 in the office of the United States Attorney. Both defendants and their counsel were present at the deposition, and all parties questioned Mr. Portillo regarding his attempted entry into the United States on December 9-10, 2007.

On June 19, 2008, Judge Adler overruled Defendant's objections to Mr. Portillo's release and ordered Mr. Portillo released to Mexico. On August 5, 2008, the Government gave notice of the portions of Mr. Portillo's deposition testimony that it intends to use in its case-in-chief at trial.

  **2.    Defendant's telephone records are a red herring**

Defendant acknowledges that he was allowed to cross-examine Mr. Portillo before the witness' release to Mexico but argues that the Government had not yet produced telephone records from the telephone Defendant was carrying. This argument fails for multiple reasons.

First, the telephone records were not in the Government's possession at the time of the deposition. Defendant has known since the inception of this case in December 2007 that a cellular telephone was seized from him at the time of his arrest. Nonetheless, Defendant never asked to inspect the telephone. Nor did he apparently attempt to subpoena the telephone records from the service provider.

On May 14, 2008, the Government obtained a warrant to search Defendant's cellular telephone. Both the warrant and documents reflecting the subsequent telephone analysis were produced to Defendant in discovery. Based on information obtained during the telephone analysis, the Government subpoenaed historical toll information for the telephone from Sprint/Nextel. Those records were received on or about June 6, 2008, i.e., after Mr. Portillo's May 23 deposition. Given that the Government did not possess the telephone records at the time of the deposition, Defendant's complaint that the records should have been produced prior to the deposition rings hollow.

In any event, the telephone records would have been entirely irrelevant to Mr. Portillo's deposition. All parties – including Defendant – questioned Mr. Portillo at length regarding the facts and circumstances of his entry into the United States in the early morning hours of December 10, 2007. Indeed, Defendant does not even attempt to explain how his own telephone records would have been relevant or material to the material witness' deposition.

### 3. **The Government has acted in good faith to secure the material witness' appearance at trial**

Defendant contends the Government has not shown Mr. Portillo is unavailable under Federal Rule of Evidence 804(a)(5). He is wrong. The Government has taken all reasonable steps to secure Mr. Portillo's appearance at trial. At the May 23, 2007 deposition, Government counsel provided Mr. Portillo and his counsel, Thomas Gilmore, Esq., with (1) a trial subpoena; (2) a letter informing Mr. Portillo that the United States would reimburse him for his travel expenses incurred in attending the trial and providing instructions as to how he should enter the United States; and (3) a letter to immigration officials requesting that Mr. Portillo be paroled into the United States for trial. (Exhibit A contains these documents and the corresponding deposition testimony.). Government counsel subsequently provided Mr. Gilmore, with a subpoena for Mr. Portillo for each of the continued trial dates. It is Government counsel's understanding that Mr. Gilmore has been unable to communicate with Mr. Portillo following his client's removal from the United States and Mr. Portillo has not initiated any communications with Mr. Gilmore or otherwise made any effort to appear on any of the trial dates.

/ / /

/ / /

1    Although the Government has made a good-faith effort to secure Mr. Portillo's presence at trial,
2 the requirements of Rule 804(a)(5) are inapplicable to this case. Under 8 U.S.C. § 1324(d):

3    Notwithstanding any provision of the Federal Rules of Evidence, the videotaped (or
4    otherwise audiovisually preserved) deposition of a witness to a violation of subsection
5    (a) of this section who has been deported or otherwise expelled from the United States,
6    or is otherwise unavailable to testify, may be admitted into evidence in an action brought
7    for that violation if the witness was available for cross examination and the deposition
8    otherwise complies with the Federal Rules of Evidence.

9 It is true that the Government must demonstrate "good faith efforts" to procure witnesses" whose
10 deposition testimony will be offered under § 1324(d). United States v. Santos-Pinon, 146 F.3d 734, 736
11 (9th Cir. 1998). As described above, the Government has done just that in this case. See Exhibit A.
12 Further, at the May 23, 2007 deposition, the Government advised Mr. Portillo of the need for his
13 testimony at trial, and Mr. Portillo represented that he would maintain contact with his attorney to make
14 any necessary arrangements for his return to the United States to provide trial testimony. Id. Simply
15 put, the Government has done everything it can do to secure Mr. Portillo's appearance at trial. See, e.g.,
16 United States v. Perez-Sosa, 164 F.3d 1082, 1085 (8th Cir. 1998) (district court properly admitted
17 material witness deposition testimony where witness had been deported to Mexico).

18  **B.    Motion To Exclude Telephone Records**

19    Border Patrol Agent Seth Sedano will testify that, at approximately 12:50 a.m. on December 10,
20 2007, he observed a suspected alien and a suspected alien smuggler at the border fence immediately
21 south of the "White Apartments" in Calexico, CA. Immediately thereafter, Agent Sedano observed
22 Defendant proceed to a concealed location immediately north of the border fence International Border
23 and talk on a cellular telephone while looking toward the border fence. Within minutes, the material
24 witness entered the United States and ran to the area of Defendant's concealed location.

25    The jury is entitled to infer that Defendant was communicating by telephone with smugglers on
26 the south side of the border fence or other co-conspiractors. A cellular telephone was seized from
27 Defendant at the time of his arrest. Records from that telephone indicate that Defendant made a call at
28 12:50 a.m. As such, the telephone records corroborate Agent Sedano's observations of Defendant

talking on the phone immediately prior to the material witness' entry into the United States.

The telephone records are relevant under F.R.E. 401. This is especially the case where the Government anticipates Defendant to contend that was "merely present" at the scene of criminal activity perpetuated by his co-defendant, Mario Fernandez. Moreover, Defendant does not even attempt to explain how the telephone records could possibly create the danger of unfair prejudice.

**C.    Motion To Exclude Rule 404(b) Evidence**

Defendant has been apprehended smuggling illegal aliens in Calexico, CA on multiple occasions between 2005 and 2007. On May 8, 2008, the United States gave notice to Defendant of its intent to introduce evidence of his prior apprehensions under Federal Rule of Evidence 404(b). In the interests of judicial economy, the United States will not seek to introduce evidence of every apprehension in its case-in-chief. Rather, the United States intends to introduce evidence in its case-in-chief concerning two of those apprehensions which occurred on January 30, 2006 and December 5, 2005. Both apprehensions resulted from Flores's efforts to smuggle aliens who had jumped over the border fence in the vicinity of 806 Second Street. Evidence of these two apprehensions will not be unduly time consuming given that each apprehension resulted from a discreet and temporally limited encounter between Border Patrol agents and Flores. The United States will seek to introduce evidence of other prior apprehensions should Defendant testify or call any witnesses to testify on his behalf.

Rule 404(b) is a rule of inclusion, and "evidence of other crimes is inadmissible under this rule only when it proves nothing but the defendant's criminal propensities." United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992). See also United States v. Hinostroza, 297 F.3d 924, 928 (9th Cir. 2002) ("The only time such evidence may be excluded by rule 404(b) is if the evidence 'tends to prove only criminal disposition.'") (citation omitted, emphasis in original); United States v. Cruz-Garcia, 344 F.3d 951, 954 (9th Cir. 2003) ("[W]e have held that Rule 404(b) is one of inclusion, and if evidence of prior crimes bears on other relevant issues, 404(b) will not exclude it.") (citation omitted).

Evidence offered to prove something other than propensity – such as intent, knowledge, plan or absence of mistake – falls within the scope of Rule 404(b). This list is illustrative, not exhaustive. Cruz-Garcia, 344 F.3d at 955; United States v. Johnson, 132 F.3d 1279, 1282 (9th Cir. 1997) ("So long as the evidence is offered for a proper purpose, such as to prove intent, the district court is accorded

wide discretion in deciding whether to admit the evidence and the test for admissibility is one of relevance."). Rule 404(b) is of particular importance in a criminal case where, as here, the defendant's knowledge and intent is a relevant issue. As the Supreme Court recognized in United States v. Huddleston, 485 U.S. 681 (1988), "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Id. at 685. See also United States v. Jones, 982 F.2d 380, 382 (9th Cir. 1992) (evidence of defendant's prior drug smuggling admissible to show defendant's intent and knowledge in prosecution for conspiracy to import marijuana).

When offered for a purpose other than propensity, evidence of other acts is admissible under Rule 404(b) where: (1) the act tends to prove a material point; (2) it is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; (4) the act is similar to the offense charged; and (5) the act's probative value is not substantially outweighed by unfair prejudice under Rule 403. United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002) (citation omitted). Application of these five factors to Defendant's prior alien smuggling apprehensions weighs heavily in favor of admissibility.

First, Defendant's prior involvement in alien smuggling is material to the issues of knowledge, intent, plan and absence of mistake. The Ninth Circuit repeatedly has upheld the admission of evidence of prior apprehensions to establish the defendant's knowledge and intent with respect to the charged offense. See, e.g., United States v. Placante-Alvarez, 366 F.3d 1058, 1062 (9th Cir. 2004) (upholding admission of prior apprehension for importation of marijuana in prosecution for importation of marijuana); United States v. Howell, 231 F.3d 615, 628 (9th Cir. 2000) (upholding admission of prior drug convictions as relevant to show defendant's knowledge and to rebut defense that defendant was "merely present" at scene). In particular, such evidence is admissible to establish knowledge and intent in alien smuggling prosecutions. See, e.g., United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327 (9th Cir. 1992) (where defendant was charged with transportation of aliens, trial court properly admitted evidence that defendant had associated with other smugglers on premises of smuggling operation to establish defendant's knowledge); United States v. Winn, 767 F.2d 527, 530 (9th Cir. 1985) (district

1  court properly admitted defendant's prior conviction for transportation of illegal aliens "because it
2  shows that appellant had knowledge of the smuggling operation in which he was involved"); United
3  States v. Longoria, 624 F.2d 66,69 (9th Cir. 1980) (district court did not err in admitting into evidence
4  defendant's conviction for transporting illegal aliens two years prior because it was "highly relevant and
5  admissible to show the requisite knowledge, criminal intent, and lack of innocent purpose"); United
6  States v. Herrera-Medina, 609 F.2d 376, 379-80 (9th Cir. 1979) (district court properly admitted
7  defendant's prior alien smuggling apprehensions to establish knowledge); United States v. Holley, 493
8  F.2d 581, 584 (9th Cir. 1974) (same).

9        Second, the "other act" evidence the Government seeks to introduce is not too remote in time.
10  There is no bright-line rule requiring the Court to exclude other act evidence after a certain period of
11  time has elapsed. United States v. Brown, 880 F.2d 1012, 1015 n. 3 (9th Cir. 1989). Defendant's prior
12  apprehensions – both of which occurred approximately two years prior to the instant offense – are
13  sufficiently recent for the purposes of Rule 404(b). See, e.g., United States v. Dhingra, , 371 F.3d 557,
14  566 (9th Cir. 2004) (other act that occurred three years earlier properly admitted); United States v.
15  Johnson, 132 F.3d 1279, 1283 (9th Cir. 1997) (upholding admission of other act that occurred 13 years
16  before charged crime).

17        Third, the Government will present sufficient evidence of Defendant's prior involvement in alien
18  smuggling. Other act evidence under Rule 404(b) should be admitted if "there is sufficient evidence
19  to support a finding by the jury that the defendant committed the similar act." Huddleston, 485 U.S. at
20  685. "[T]he testimony of a single witness . . . satisfies the low-threshold test of sufficient evidence for
21  the purposes of Rule 404(b)." Dhingra, 371 F.3d at 566. Here, as in Dhingra, the Government will
22  satisfy this threshold through percipient witness testimony.

23        Fourth, Defendant's prior alien smuggling endeavors are similar to the instant offense given that
24  those prior apprehensions involve the smuggling of aliens over the border fence in the same area of
25  Calexico, CA where the instant offense occurred.

26        Finally, this evidence is highly probative and is "not the sort of conduct which would provoke
27  a strong and unfairly prejudicial emotional response from the jury." Ramirez-Jiminez, 967 F.2d at 1327
28  (emphasis added).

**D.    Motion To Exclude Expert Witness Testimony**

On June 12, 2008, the Government provided written notice to Defendant of its intent to call Immigration and Customs Enforcement Agent Paul Lewenthal as an expert witness in alien smuggling methods of operation, the coordination of alien smuggling ventures and the operation of alien smuggling ventures for financial gain. Specifically, the Government anticipates Agent Lewenthal will testify regarding (1) the modus operandi of alien smugglers in the Calexico, CA area; (2) the coordination of alien smuggling ventures on both sides of the border; and (3) the operation of alien smuggling ventures for financial gain. The basis for Agent Lewenthal's opinions lies in his 16 years of experience as a Border Patrol and ICE agent, including alien smuggling cases he has investigated personally; communications and interactions with other law enforcement personnel, cooperating defendants and confidential informants; and formal training from the federal law enforcement academy. Also included in the notice was a summary of Agent Lewenthal's qualifications. A copy of the expert notice is attached as Exhibit B.

**1. Modus operandi of alien smugglers is the proper subject of expert testimony.**

"If specialized knowledge will assist the trier of fact in understanding the evidence or determining an issue, a qualified expert witness may provide opinion testimony on the issue in question." United States v. Cordoba, 104 F.3d 225, 229 (9th Cir. 1997) (citing F.R.E. 702). The trial judge is the gatekeeper regarding the type and scope of expert testimony that should be admitted in any particular trial and has "broad latitude" in determining the relevance and reliability of such testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142 (1999).

The Ninth Circuit repeatedly has upheld the use of expert testimony to explain criminal modus operandi. "Government experts may testify as to the general practices of criminals to establish the defendants' modus operandi which helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." United States v. Freeman, 498 F.3d 893, 906 (9th Cir. 2007) (citation omitted) (upholding admission of expert testimony that defendant's words and actions were "consistent with the common practices of drug traffickers"); United States v. Patterson, 819 F.2d 1495, 1507 (9th Cir.1987) (allowing expert testimony on how criminal narcotics conspiracies operate). Although often utilized in complex cases,

modus operandi testimony is permitted in non-complex cases as well. See United States v. Figueroa-Lopez, 125 F.3d 1241, 1244 (9th Cir. 1997) ("[W]e even allow modus operandi expert testimony in cases that are not complex.") (citation omitted).

The methods and tactics of alien smugglers in Calexico, CA are not matters within the common knowledge of an average juror. Testimony concerning such methods and tactics would assist the trier of fact in understanding the significance of the facts of this case and Defendant's role in the alien smuggling operation at issue in this case. The Ninth Circuit has relied on expert testimony in alien smuggling cases to uphold § 1324 convictions. See, e.g., United States v. Tsai, 282 F.3d 690, 697 (9th Cir. 2002) (affirming alien smuggling conviction based, in part, on government expert testimony "regarding the usual fees paid to escorts and the usual price paid by a smuggled alien"). District courts in this circuit similarly have allowed expert testimony on modus operandi in alien smuggling prosecutions. See, e.g., United States v. Flores-Perez, 2007 WL 4259167 (S.D. Cal. Dec. 4, 2007) (Lorenz, J.) (Border Patrol Agent testified as expert witness "regarding the alien smuggling techniques used in Imperial Valley," that agent "had never encountered a case where someone playing a role in an alien smuggling organization had participated without expecting some sort of financial gain" and explained "the structure of small-scale smuggling organizations"); United States v. Malboa-Pena, 2007 WL 2903013 (D. Ariz. Oct. 3, 2007) (allowing expert testimony on alien smuggling modus operandi to explain "how aliens are staged in hotels, how aliens are guided by foot guides across the border, how relatives are to make payment to other persons, how aliens are picked up in a van . . .").[1]

Here, the expert testimony offered by Agent Lewenthal will explain the methods and tactics of alien smugglers in the Calexico area, including the coordination of the aliens' entry into the United States, their harboring and transportation within the United States and the nature of alien smuggling as a for-profit undertaking. The testimony will assist the jury to understand the workings of the conspiracy to bring in illegal aliens in which Defendant participated and how Defendant's actions aided and abetted

---

[1] The Government is unaware of any published Ninth Circuit opinion addressing expert testimony on the modus operandi of alien smugglers. However, the Ninth Circuit has upheld such testimony on multiple occasions in unpublished opinions. See, e.g., United States v. Vaca-Hernandez, 1999 WL 451214 (9th Cir. May 5, 1999); United States v. Salazar-Munoz, 2000 WL 1529233 (9th Cir. Oct., 3, 2000); United States v. Inda-Mendoza, 2000 WL 425018 (9th Cir. 2000); United States v. Arnold, 2001 WL 111488 (9th Cir. Feb. 7, 2001).

the bringing in of an alien on December 9-10, 2007. Such testimony is relevant in the context of this alien smuggling prosecution and falls well within the broad scope of permissible expert testimony under Federal Rule of Evidence 702.

### 2. The expert testimony will not violate F.R.E. 704(b).

It is undisputed that an expert witness may not opine "as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." F.R.E. 704(b). "A prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea." United States v. Morales, 108 F.3d 1031, 1037 (9th Cir. 1997) (in prosecution for false bookkeeping entries, expert could properly testify that defendant had weak grasp of bookkeeping because such testimony did not state opinion or draw necessary inference that defendant intended to make false entries). Stated otherwise, an expert witness violates Rule 704(b) where he or she offers an "explicit opinion" on the defendant's state of mind. United States v. Murillo, 255 F.3d 1169, 1178 (9th Cir. 2001) (finding no violation of Rule 704(b) where expert testified as to his "experience with drug traffickers" generally and did not offer an "explicit opinion" as to the defendant's knowledge or intent). See also United States v. Freeman, 498 F.3d 893, 906-07 (9th Cir. 2007) (upholding admission of expert testimony that defendant's "words and actions were consistent with the common practices of drug traffickers" because expert "offered no opinion as to whether Freeman possessed the requisite criminal intent to possess and distribute cocaine, but instead described a common practice of those who do have such intent").

Here, as in Morales, Murillo and Freeman, Agent Lewenthal will not offer any opinion as to whether Defendant possessed the requisite criminal intent to smuggle aliens. There is no basis to exclude his testimony concerning the modus operandi of alien smugglers under Rule 704(b).

### 3. The Government will not offer "alien smuggler profile" or structure testimony.

The Ninth Circuit has explained, in the context of narcotics cases, that "[a] drug courier profile is a somewhat informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics, commonly used by agents as a basis for reasonable suspicion to stop and question a subject." United States v. Cordoba, 104 F.3d 225, 229 (9th Cir. 1997). Defendant contends that Agent

1  Lewenthal's expert testimony will constitute "profile" testimony, but this argument misapprehends the
2  nature of Agent Lewenthal's testimony.

3  Agent Lewenthal will not testify that Defendant fits any sort of "alien smuggler profile." The
4  Ninth Circuit's opinion in Cordoba, supra, is instructive. There, the defendant challenged the admission
5  of expert testimony concerning the modus operandi of drug traffickers. Specifically, the defendant
6  asserted that testimony to the effect that drug traffickers do not use unknowing couriers constituted
7  impermissible profile evidence. Id. The Ninth Circuit rejected this argument:

> [T]estimony that drug traffickers do not entrust large quantities of drugs to unknowing transporters is not drug courier profile testimony. None of the expert testimony in this case was admitted to demonstrate that Cordoba was guilty because he fit the characteristics of a certain drug courier profile.

12  Id. at 230.

13  The reasoning of Cordoba holds true here. Agent Lewenthal will testify the methods and tactics
14  of alien smugglers. He will not testify that Defendant is guilty "because he fit the characteristics of a
15  certain [alien smuggler] profile." Id,

16  In a related argument, Defendant contends that Agent Lewenthal will offer inadmissible structure
17  testimony. Again, Defendant is wrong. In a line of cases beginning with United States v. Vallejo, 237
18  F.3d 1008 (9th Cir. 2001), the Ninth Circuit has recognized that "the admission of expert testimony
19  about the structure of drug trafficking organizations violates Federal Rules of Evidence 401 and 403
20  when the defendant is not charged with a conspiracy to import drugs or when the evidence is not
21  otherwise probative of a matter properly before the court." United States v. Pineda-Torres, 287 F.3d
22  860, 863 (9th Cir. 2002) (citing Vallejo, 237 F.3d at 1012). Each of these cases was a "simple border
23  bust case," id. at 864, where the defendant was not charged in with conspiracy and there was no
24  evidence "establishing a connection between the defendant and a drug trafficking organization." Id.
25  Indeed, the "only issue" in both Pineda-Torres and Vallejo "was whether the defendant knew that there
26  were drugs in the car." Id. Given these particular facts, the Ninth Circuit found "[t]he implication of
27  the expert testimony and the government's argument to the jury in both cases [Pineda-Torres and
28  Vallejo] was plainly that the defendant was a member of an international drug organization and had

1  knowledge that drugs were in the car." Id.

2  The rule of Pineda-Torres and Vallejo had no application here for multiple reasons. First, and most important, Defendant is charged with conspiracy to bring in illegal aliens as well as aiding and abetting. Simply put, this is not a "simple border bust case," and the roles of Defendant and his co-conspirators are relevant to the jury's understanding of the nature of the conspiracy charged in Count One of the Superseding Indictment. Second, Agent Lewenthal will not "extrapolate about the various roles individuals might play in hypothetical drug trafficking organizations" or "imply that [defendants] participated in a large-scale operation," the primary reasons why structure testimony was held inadmissible in Pineda-Torres and Vallejo. Id. at 865.

Agent Lewenthal's modus operandi testimony is more analogous to the type of "unknowing drug courier" modus operandi testimony that the Ninth Circuit has consistently held admissible. See United States v. Murillo, 255 F.3d 1169 (9th Cir. 2001); Cordoba, 104 F.3d at 229. Indeed, in Pineda-Torres, the Court of Appeals cited Murillo and Cordoba in explaining at length that its holding did not cast doubt on the viability of such modus operandi testimony where the expert "looks at the specific facts involved and, in light of his investigative experience, offers his opinion that it would be illogical and contrary to general practice for a drug trafficker to take the very risky step of entrusting his valuable cargo to an unknowing courier." Pineda-Torres, 287 F.3d at 865. Here, Agent Lewenthal will testify why it would be "illogical and contrary to general practice" for an alien smuggler to bring illegal aliens into the United States without having previously arranged to harbor and transport the aliens within the United States. In the spectrum of permissible expert testimony, the testimony here falls much closer to Murillo and Cordoba than to Pineda-Torres and should not be excluded.

**4. The Government provided proper expert notice and has fulfilled its discovery obligations.**

As noted above, on June 12, 2008, the Government provided written notice to Defendant of its intent to call Agent Andrew Lewenthal as an expert witness in alien smuggling methods of operation. The notice identified Agent Lewenthal as the Government's expert witness and described the scope and bases for his testimony. In addition, the Government provided Defendant with a summary of Agent Lewenthal's qualifications. See Exhibit B.

With respect to expert witnesses, F.R.Crim.P. 16(a)(1)(G) requires that the Government provide a written summary "describ[ing] the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996). The expert notice in this case provided precisely that information. Indeed, the information contained in the notice surpassed the Government's disclosure obligations under Rule 16. See, e.g., United States v. Jackson, 51 F.3d 646, 650-51 (7th Cir. 1995) (expert notice regarding drug courier profile expert testimony held sufficient where it identified experts, subject matter of testimony and that experts would "base their testimony on their years of training and experience in the area of drug investigations"); United States v. Mendoza-Paz, 286 F.3d 1104 (9th Cir. 2002) (Government complied with Rule 16 by providing notice that drug valuation expert would testify based on information gained from other law enforcement agents, cooperating defendants and confidential informants).

It is well-settled that a witness may offer expert testimony based on the witness' personal knowledge and experience. See, e.g., United States v. Hankey, 203 F.3d 1160, 1167-69 (9th Cir. 2000) (upholding admission of expert testimony from police officer concerning gang affiliations and code of silence); United States v. Decoud, 456 F.3d 996, 1012-14 (9th Cir. 2006) (expert testimony used to interpret coded drug jargon). Here, Agent Lewenthal will rely on his training, knowledge and experience accumulated over the course of his 16-year career as a Border Patrol and ICE agent to provide testimony regarding the modus operandi of alien smugglers.

The notice provided to Defendant contains a summary of Agent Lewenthal's training and experience that form the basis for his expert testimony. Defendant nevertheless asserts he is entitled to "reports and various reference materials" relied upon by "any proposed experts." Motion at 19. The written materials relied upon by Agent Lewenthal in forming his opinions include reports of investigation pertaining to Defendant, which have been produced in discovery. Defendant is simply wrong to the extent he contends the Government must produce any and all documents or information Agent Lewenthal may have received or reviewed over the past 16 years which have contributed to the general body of knowledge and experience upon which he bases his opinions.

///

///

Defendant cites no authority supporting the proposition that Rule 16 discovery encompasses the vast universe of background material that comprises an expert's knowledge and experience. In <u>United States v. Mendoza-Paz</u>, 286 F.3d 1104 (9th Cir. 2002), the Government designated a drug value expert in a marijuana importation prosecution. When the defense requested discovery of "materials relied upon by the valuation expert," the Government "responded that the expert relied upon his general experience and background, rather than anything tangible." <u>Id</u>. at 1108. The district court held that "under Rule 16, <u>Mendoza-Paz was entitled only to tangible materials rather than background materials</u>." <u>Id</u>. (emphasis added). Thereafter, the defendant "requested access to the database and confidential informants that the expert testified had informed his opinion." <u>Id</u>. at 1109. The district court declined to order such discovery, "finding that the basis of the expert's opinions was his general background and life experience." <u>Id</u>.

The Ninth Circuit held that "[t]he district court did not err in ruling that the government sufficiently complied with Rule 16(a)(1)(E)." <u>Id</u>. at 1111. Specifically, the expert notice in <u>Mendoza-Paz</u> provided the defendant "with a fair opportunity to test the merit of the expert's testimony through focused cross-examination," and the district court acted properly in finding the expert witness notice adequate and denying the defendant's request for sweeping expert discovery. <u>Id</u>. (citation omitted).

<u>Mendoza-Paz</u> controls and fatally undermines Defendant's argument that he has not been provided with adequate notice or discovery. Even aside from <u>Mendoza-Paz</u>, to accept the incredibly expansive interpretation of Rule 16 advanced by Defendant – that the Government must produce any background materials which might in some way inform an expert's opinion – would require the production of reams of confidential (yet almost certainly irrelevant) law enforcement information whenever the Government designates an expert witness to testify based on his or her training and experience. <u>See</u>, <u>e.g.</u>, <u>United States v. Hankey</u>, 203 F.3d 1160 (9th Cir. 2000) (gang affiliations and code of silence testimony); <u>United States v. Decoud</u>, 456 F.3d 996 (9th Cir. 2006) (coded drug jargon testimony); <u>United States v. Murillo</u>, 255 F.3d 1169 (9th Cir. 2002) (unknowing drug courier modus operandi testimony).

/ / /

/ / /

**5. The Court has broad discretion as to the exercise of its gatekeeping function.**

The district courts "are entitled to broad discretion when discharging their gatekeeping function." Hankey, 203 F.3d at 1168. "[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." Kumho Tire Co., 526 U.S. at 142 (emphasis in original). Whether to conduct a Daubert hearing in the first instance or, if a hearing is conducted, whether it is outside the presence of the jury, are matters squarely within the Court's discretion. United States v. Calderon-Segura, 512 F.3d 1104, 1108 (9th Cir. 2008) (affirming admission of fingerprint testimony without Daubert hearing); United States v. Alatorre, 222 F.3d 1098, 1100, 1104 (9th Cir. 2000) (Daubert hearing may be in presence of jury).

## IV

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny Defendant's motions in limine.

DATED: August 16, 2008.   Respectfully submitted,

Karen P. Hewitt
United States Attorney

s/ David D. Leshner
DAVID D. LESHNER
Assistant U.S. Attorney

|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| SOUTHERN DISTRICT OF CALIFORNIA | |

UNITED STATES OF AMERICA,           )   Case No. 07-CR-3405-W
                                    )
        Plaintiff,                  )
                                    )
    v.                              )
                                    )   CERTIFICATE OF SERVICE
MARIO RAYMOND FERNANDEZ (1),        )
                                    )
ERNESTO FLORES-BLANCO (2),          )
                                    )
        Defendants.                 )
_____)

IT IS HEREBY CERTIFIED THAT:

I, DAVID D. LESHNER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT ERNESTO FLORES-BLANCO'S MOTIONS IN LIMINE** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Sylvia Baiz, Esq.

Candis Mitchell, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 16, 2008.

                    /s/ David D. Leshner
                    DAVID D. LESHNER