

**SYLVIA BAIZ**
California State Bar No. 124367
The Granger Building
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1410
Facsimile: (619) 544-1473

Attorney for Defendant **Flores-Blanco**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HON. THOMAS J. WHELAN)**

| | |
|---|---|
| UNITED STATES OF AMERICA,            ) <br> ) <br> Plaintiff,            ) <br> ) <br> v.            ) <br> ) <br> **ERNESTO FLORES-BLANCO,**            ) <br> ) <br> Defendant.            ) <br> _____) | Criminal No. 07-CR-3405-W <br><br> Trial Date: August 20, 2008 <br> Time: 9:00 a.m. <br><br><br> MOTION FOR JUDGMENT OF ACQUITTAL |

I.

**STATEMENT OF FACTS**

According to government reports, on December 9, 2007 agents began surveillance in the neighborhood directly north of the U. S. Mexico border at about 5:00 p.m. At various times, one agent, Sedano, observed Mr. Flores being present or walking around the neighborhood. Mr. Flores lives at 806 Second Street, Calexico, California which is about 60 feet from the U.S./Mexico border and in the area where agents indicated they were conducting their surveillance. Agent reports say that agent Sedano saw Mr. Flores motion with his hands toward the border and say "I'm here" in Spanish. Reports indicate then that Mr. Flores saw agent Sedano and was startled and told someone on his cell phone that someone was there; then walked away. On that evening Mr. Flores was out in the neighborhood for various reasons, among which was the fact that he was putting out the trash for one of the neighbors who was out of town. Mr. Flores was later arrested two and a half blocks and around the corner from where the material witness was arrested. The

material witness who was arrested that night indicated that a friend of his made arrangements to smuggle him into the United States. He climbed over the U.S./Mexico border fence and ran toward a person (whom he saw only as a shadow) who was supposed to help him hide. The material witness was then found hiding in some bushes and was arrested by a border patrol agent.

## II.

### MR. FLORES REQUESTS THAT THE COURT GRANT HIS MOTION UNDER RULE 29

There is insufficient evidence that Mr. Flores was involved in the brining in of an undocumented person in violation of section 1324(a)(1)(A)(I) and (v)(I). Rule 29, provides in pertinent part:

> The court on motion f a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

In 8 U.S.C. § 1324, Congress created several discrete immigration offenses, including: (1) bringing an alien to the United States; (2) transporting or moving an illegal alien within the United States; (3) harboring or concealing an illegal alien within the United States; and (4) encouraging or inducing an illegal alien to enter the United States. We consider here the scope and meaning of the first of these offenses, codified in § 1324(a)(2), which creates criminal liability for "[a]ny person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, *brings to...* the United States in any manner whatsoever, such alien." United States v. Lopez, 484 F.3d 1186, 1191 (9th Cir. 2007) (emphasis added)

**A.  There is insufficient evidence to convict Mr. Flores of conspiracy to bring in an undocumented person, or aiding and abetting the bringing in.**

In Lopez, the Court held that, "In construing the "brings to" offense, we observe initially that "[t]he language of the statute itself indicates that Congress intended it to apply to extraterritorial conduct." That is, the "brings to" language of § 1324(a)(2) clearly connotes the

2

act of bringing the alien "from outside" the country. The "transports within" offense of § 1324(a)(1)(A)(ii), by contrast, does not by its text implicate extraterritorial behavior. Indeed, the language of the latter provision limits the offense to acts "within the United States." On a plain reading of the statutory language, then, a person who moves aliens from one location in the United States to another has not brought those aliens "to" the United States, has not acted extraterritorially, and has not committed a "brings to" offense. Lopez at 1195 citing United States v. Villanueva, 408 F.3d 193, 198 (5th Cir.) (discussing history), cert. denied, --- U.S. ----, 126 S.Ct. 268, 163 L.Ed.2d 241 (2005).

In Lopez the Court find that the fact that Lopez encountered the aliens and provided them with transportation only after they had been dropped off in the United States by the initial transporter who brought them across the border from Mexico. Thus, her act of transporting the aliens occurred only after the "brings to" offense had terminated and cannot, standing alone, serve as a basis for sustaining her conviction for aiding and abetting that offense. Lopez's "brings to" convictions must therefore be reversed unless the government can prevail on its second theory, that Lopez acted before the drop-off to aid and abet the extraterritorial offense. Id. at 1199. Furthermore, "an individual may not be convicted of aiding and abetting a completed offense." See Lopez, 484 F.3d at 1191.

In Lopez the court stated that under certain a defendant who does not physically transport aliens across the border may be held criminally liable for aiding and abetting a "brings to" offense. A financier who organizes and funds a smuggling operation, for example, whether located in or outside of the United States, may be said to have "associate[d] himself with the venture, ... participate[d] in it as in something he wishe[d] to bring about, [and sought] by his action to make it succeed." *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949)(Other citations omitted). Clearly, the Court found that the mere act of picking up aliens at a location near the border and transporting them within the United States is not sufficient to support a conviction for aiding and abetting a "brings to" offense. Nor did the fact that following completion of the "brings to" offense Lopez twice spoke to a person who may have

been the transporter add anything to the equation. Such evidence cannot, without more, establish the intent necessary to prove aiding and abetting-it cannot show that the defendant knowingly and intentionally commanded, counseled, or encouraged the initial transporter to commit the "brings to" offense. Id at 1200

As the Ninth Circuit previously held, "mere suspicion or speculation does not rise to the level of sufficient evidence." United States v. Stauffer, 922 F.2d 508, 514(9th Cir.1990).

**B. There is insufficient evidence to convict Mr. Flores of Aiding and Abetting or Conspiracy**

Recently the Ninth Circuit determined in a case in which it reviewed under the plain error – because the defense attorney had not moved to acquit at the end of the government's case or at the end of the trial– that there was sufficient evidence to convict of aiding and abetting the brining in of the undocumented person. In United States v. Singh, 532 F.3d 1053 (9th Cir. 2008), the court held in the end that there was sufficient evidence to convict Singh of aiding and abetting the bringing in to the United States, but not before noting that there was much evidence that was not enough.

> Without a doubt, Singh was not a newcomer to the smuggling business when he facilitated the arrangements for Patel in January 2006. In addition to his recruitment of a fellow taxi driver into the smuggling operation, Singh himself earlier twice crossed the border into Canada to meet with Raman Pathania, who was part of the Maltani smuggling operation, to discuss developing alternate smuggling routes.
>
> There is also evidence that Singh engaged in preparatory and planning activity in relation to a "bringing to" offense. Harjeevan Parhar, another cooperating defendant, described that during a meeting at a house in Canada, he discussed with Singh and Pathania how aliens would be transported and that "next time or any other time that we would do this Iegal [sic] activity and smuggling aliens, that all the work would go to Mr. Singh." Singh said that "he wanted the work to go through him, not through anyone else." Parhar also testified that, in January 2006, he took part in a couple of telephone conversations in which Singh asked if there were any more aliens coming. He also heard another member of the conspiracy tell Singh that people were coming and to be ready, though he did not say when this conversation took place. This evidence establishes that Singh sought work for the smuggling operation, and took an active

4

role in coordinating with others in the conspiracy.

**Even this background evidence is insufficient standing on its own to show that Singh actually aided and abetted bringing Patel to the United States. However, additional and more specific evidence-a phone conversation in close proximity to Patel's arrival-provides a nexus between Singh's preparatory and collaborative work and the events related to Patel.** On January 26, 2006, at 1:16 p.m., prior to Patel's crossing, Singh called Multani, telling Multani that he was calling to "find out if there is some work to do." Multani then informed Singh there was work, and that it "has not started yet." They then had an exchange in which Singh agreed to "drop off" the person and bring back the passport for a fee of $2,000.

**Preparation to undertake the transporting of an illegal alien within the United States, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(v)(ii), and 1324(a)(1)(B)(I), does not by itself necessarily establish intent to aid a "brings to" offense.** For example, in *Lopez*, we rejected the government's similar argument that Lopez's decision to purchase a Ford Expedition in the United States four days before it was used in the offense, and pick up the vehicle on the day she was asked to transport the aliens from a drop-off point in the United States to another domestic destination, established intent to aid a "brings to" offense. *Lopez*, 484 F.3d at 1200. **Thus, to the extent that Singh's preparatory calls involved planning for the transporting of an illegal alien within the United States, they are not enough to establish intent to aid a "brings to" offense**. The calls are relevant, however, to Singh's participation in an overall "brings to" scheme. **Likewise, even the *commission* of the crime of transporting of an illegal alien within the United States does not, by itself, establish intent to aid a "brings to" offense. Thus, the fact that Patel crossed the border and was delivered to the Sea-Tac Inn, Singh picked up Patel from the hotel, drove her to the airport, bought her an airplane ticket with a credit card, and escorted her to New York is still not enough, without more, to establish sufficient evidence to support the conviction.**

**Nevertheless, at least on plain error review,** we are satisfied that the evidence of the events of January 26, 2006 provides sufficient link and detail to allow a rational trier of fact to find the elements of aiding and abetting beyond a reasonable doubt under *Lopez*. In particular, the evidence shows that in the hours before Patel entered the United States, Singh sought smuggling work, sealed a deal on the arrangements for the smuggling, including a return of the false passport that could be used, and agreed to assist fulfilling the

smuggling contract for $2000 by traveling with Patel to New York. These details, worked out in advance, were arguably central to the principals' decision to bring Patel to the United States.

Here, there is insufficient evidence that Mr. Flores was even involved in aiding the undocumented person by encouraging and inducing him, let alone that the conspired with others for bringing him or aiding and abetting the bringing in.

### III.
### CONCLUSION

For the foregoing reasons, Mr. Flores-Blanco respectfully requests that the Court Flores his motions.

Respectfully submitted,

/s/ Sylvia Baiz

Date: August 20, 2008

**SYLVIA BAIZ**

Attorney for Mr. Flores-Blanco

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal No. **07-CR-3405-W** |
| Plaintiff, | ) <u>PROOF OF SERVICE</u> |
| v. | ) |
| **ERNESTO FLORES-BLANCO**, | ) |
| Defendant. | ) |

I, the undersigned, say:

1. I am over eighteen years of age, a resident of the County of San Diego, State of California, and not a party to the within action;

2. My business address is 964 Fifth Ave., Suite 214, San Diego, California 92101;

3. I have caused service of **MOTION FOR JUDGEMENT OF ACQUITTAL** on opposing counsel by electronically filing the foregoing with the Clerk of the District Court using its ECF System;

I certify under penalty of perjury that the foregoing is true and correct. Executed on August 20, 2008 at San Diego, CA.

<u>s/ Sylvia A. Baiz</u><br>
SYLVIA A. BAIZ